**BENEDICT v. BENEDICT**

Common Pleas, Delaware County

No. 14205. Decided January 3, 1946.

F. M. Marriott, Delaware for the plaintiff.

Humes, McAllister & Whitney, Delaware, for the defendant.

## OPINION

By WICKHAM, J.

In this contested divorce case the plaintiff, a twenty-five year old farmer, seeks a decree from his eighteen year old wife.

He is not a stranger to the court. He was here two years ago and won an uncontested decree against his first wife upon a complaint substantially the same as that upon which he now prays to be restored to the status of eligible bachelorhood.

The substance of the petition charges gross neglect of duty and extreme cruelty. The defendant, answering by guardian ad litem, raises the defenses of general denial, recrimination, and condonation.

Plaintiff testified he suffered much mental pain because defendant kept and wore a wrist watch, diamond ring, and sweater, and played a guitar, all given her before marriage by a former boy friend, a section hand who still waves as he hand-cars by and occasionally stops to buy eggs.

Defendant rejoined by showing plaintiff has lately been too friendly with his first wife, who by the merest coincidence is now seeking to cancel her second case of matrimonial misjudgment by appropriate action in the neighboring county of Franklin.

Plaintiff complains that defendant stuck too close to him, and tagged along with him to the farm where he works, following him into the fields to ride tandem on the implements. Defendant in turn says that plaintiff did not stick close enough to her, and abandoned her when she went to the hospital for the still-birth of their child.

Plaintiff says defendant was dirty in her housekeeping, never emptied the commode, and hung her clothes on the floor. She replied that plaintiff never took a bath, and that the clothes on the floor were his. The sheriff, a frequent

business guest at the invitation of various members of the family corroborated that the clothes on the floor were men's clothes, and plaintiff admitted he did not bathe very frequently, considering it an unsafe practice under the circumstances.

Plaintiff says defendant is a glutton, and that on one occasion she consumed eighteen ears of field corn, an expensive commodity these days. Defendant modestly admitted this Gargantuan feat, explaining it was all in a playful contest with her husband who ate sixteen. The court is inclined to view this victory as no fluke, and to believe defendant had some preliminary training for this effort, as her figure is definitely of the class known in these parts as corn-fed.

Plaintiff says defendant and her mother locked him in the house one day when he was supposed to be at the farm bright and early filling silo, and there he remained imprisoned until the ever obliging sheriff, summoned by his father, came to the rescue. The sheriff says he found plaintiff in the house on the first floor, and that while the doors were locked, the windows were open, and it was an easy step through them to the ground. Plaintiff doubtless would have been better prepared for this emergency if he had ever read Mark Twain's "The Storm on the Erie Canal."

Plaintiff filed his petition in this case September 5, 1945, and eleven days later defendant says she swallowed thirty-eight sleeping pills. Immediately announcing that she was an imminent suicide, she was rushed to the hospital and given a thorough pumping out. Plaintiff says this is just another example of defendant's cruelty, scaring every one and running up hospital bills like that.

Strange as it may seem, there were still more charges and counter charges between these parties, mostly along the same general line. This opinion should not further be burdened by their repetition. It will be sufficient to observe that at the finish, plaintiff was not noticeably in front on the merits.

It is urged on behalf of plaintiff that the parties should be divorced because no social gain will be realized by keeping them together, whereas defense counsel insists on his client's right to continue to enjoy the miseries of the situation on the ground that that is the way the law says it must be.

The court must agree that under the circumstances here presented the law of Ohio is with the defendant. **Mattox v Mattox, 2 Ohio 233; Hanover v Hanover, 34 Oh App. 483,** 171 N. E. 350, (1929); **Burke v Burke, 36 Oh App. 551,** 173 N. E. 637 (1930); **Karpanty v Karpanty, 39 Oh App. 194,** 177 N. E. 521, (1926); **Phillips v Phillips, 48 Oh App. 322,** 193 N. E. 657 (1933); and **Veller v Veller, 57 Oh App. 155,** 12 N. E. 2d, 783 (1935).

In the Hanover case, the trial judge said, according to the record:

"I will say at the outset, that I am not very keen about keeping a man and woman together by the tie of marriage when love is dead. If love is dead there is nothing left of the marriage relation but the ashes of roses, and I can't see why they should be kept tied together, and it has been the policy of this court to establish legally what is already existing as a fact, that the man and woman have been separated and been living separate, and the evidence is they will not live together again, and can't live together again."

The Court of Appeals then stated:

"The answer to this, in the language of the Supreme Court of Nebraska, is that 'there is still a discernible interval between the statutes of this state and the right of free divorce, which needs to be bridged, if at all, by the legislature and not by the courts.' *** 'Neither can the court itself, or learning that the parties have had petty quarrels, and have scolded and called one another hard names, come to the conclusion that they would be better apart. Before a divorce can be granted, there must be found an injured party and a guilty party. Society and the state are interested in upholding the marriage relation, and the statutory safeguards thrown around it will therefore be strictly insisted upon. No divorce will be granted except in the manner provided by law.' "

This court is constrained to doubt that the ashes of this marriage are those of roses. They had better be left uncharacterized. But if a court should take the position that it must grant divorces merely because the parties are irreconcilably estranged, there would practically never be an opportunity to deny a decree, for the plaintiff nearly always claims there is no hope for a reconciliation. This in practice would be permitting the plaintiff to lift himself by his own boot straps, for by merely claiming he will never again live with the defendant under any circumstances whatever, the court would be forced to conclude that the parties would be better off divorced and grant the decree regardless of the causes for the estrangement.

It is clear that this course cannot be followed, and the defendant is entitled to have her legal rights, if not her judgment, respected.

The petition will therefore be dismissed at plaintiff's costs.