**BROWN, Plaintiff-Appellee, v BROWN, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4029. Decided October 22nd, 1947.

John F. Seidel, Columbus, for plaintiff-appellee.

Bailey & Bailey, Akron, and Ralph Merchant, Columbus, for defendant-appellant.

## OPINION

By THE COURT

The appeal is on questions of law from a decree of divorce granted to the plaintiff upon the aggression of the defendant.

The petition was filed March 27, 1946, and in general terms charged "gross neglect of duty, which will be made to appear more fully upon the trial of this cause." The answer was a general denial.. The cause came on to be tried. The plaintiff, his brother, and a comrade testified, as did several character witnesses in his behalf. The defendant and her mother testified on her behalf and depositions of three witnesses are found with the files. The Bill of Exceptions is not indexed.

At the conclusion of plaintiff's testimony a motion was made by the defendant for directed verdict, which was renewed at the end of all of the testimony. Both motions were overruled.

The Court made separate findings of fact and law upon which a decree of divorce was entered for the plaintiff on the ground of gross neglect of duty of the defendant. Motion for new trial and for judgment was interposed by the defendant and overruled.

Nine errors are assigned which it is not necessary to consider separately. The findings of fact, in so far as germane to the questions presented on this appeal, are separated into numbered paragraphs in the brief of counsel for the appellee,

which we employ, the better to illustrate the questions of law involved.

(1) That the defendant "refused to permit or allow him (plaintiff) to establish a home in this city, (Columbus) and refused to come here and live with him."

(2) That "defendant failed to love and honor her husband, the plaintiff, in that she constantly neglected him and made many false statements and accusations to him."

(3) That "a number of letters were written by her upon her own admission, addressed to her own husband but signed in the name of some other persons accusing the plaintiff of wrongful association and unfaithfulness on his part."

(4) That "she constantly neglected and complained to him about money matters without just cause, thereby failing to honor and respect her husband."

(5) That "the exhibits in the form of photostatic copies, addressed to "Dear Charlotte" were false, and fraudulent and written by her for the purpose of abusing and harrassing the plaintiff." (Admittedly, "Charlotte" should read "Theresa".)

(6) That "plaintiff was a good, dutiful and faithful husband; that he provided for the defendant to the best of his ability during their entire married life. That he constantly sent her money during his military service and wrote to her regularly."

As a matter of law the Court concluded:

(1) The above acts of aggression as set forth in the findings of fact, constitute a gross neglect of duty; and

(2) That said acts of aggression are corroborated by the exhibits in this case by the admission on the part of the defendant and by the testimony of witnesses on behalf of the plaintiff.

At the outset it should be observed that every exhibit, consisting of letters, telegrams, receipts and clippings, introduced by the plaintiff, were prepared and sent subsequent to the filing of plaintiff's petition herein for divorce. It is manifest that, unless they contain admissions, they could not be employed to establish any substantive proof of a ground for divorce set out in the petition. With this in mind, we examine the special findings of fact.

No. 1, if true, in our judgment, is the only finding of fact which would support a decree of the plaintiff on the ground of gross neglect of duty.

No. 2, in so far as it makes the finding that "she constantly neglected him," is but a conclusion of law and as to the making of "false statements and accusations to him"

is predicated in the main upon defendant's exhibits. Numbers 3 and 5 are based entirely and No. 4, in part, upon defendant's exhibits. No. 6 is against the weight of the evidence in view of the letters written by the plaintiff while in the service to his brother and the admissions as to his conduct therein set forth, defendant's Exhibit "D".

The proof to support the finding of fact No. 1 is very meager and of doubtful probative effect and is entirely uncorroborated, as are the other findings of fact, unless it would be No. 4, which we hereinafter discuss.

Corroboration is specifically required by statute, §11988 GC. This section provides:

"Divorce, * * *, shall not be granted upon the testimony or admissions of a party unsupported by other evidence."

Read v Read, 7 Abs 117. The corroboration must pertain to material elements essential to the proof of the ground for divorce set out in the petition.

The testimony of the plaintiff upon the issue of gross neglect of duty, as found in No. 1 of the findings of fact, is to the effect that after plaintiff was discharged from the hospital in September, 1945, and after he had returned from military service in the late war, he went to Akron where the defendant was living and there met her. On page 52 of the record, plaintiff, in answer to a question, said:

"And I wanted to come right back to Columbus here and her mother and her brother tried to insist that I move up there and give up everything that I had here."

This statement as to what the mother and brother said went out on objection. Then at page 53, plaintiff said:

"And I refused and I told her that I would try to get a home back here for us and she refused to live in one room. She wanted an apartment or nothing."

And at page 54:

"Q. Did you have a place in Columbus for her?

A. No. I could get rooms but I could get no apartments. She would not live in one room, that was all.

Q. What was your income at that time?

A. Nothing. My pension never started until the following month."

These questions and answers, typical of all, presented substantially all of the proof upon which the decree could properly have been based. It is manifestly inadequate for several reasons: First, it does not definitely appear that the plaintiff at any time had even a room rented, or assured, in Columbus to which the defendant could come to live; Second, that he never communicated to the defendant that he had any suitable room in which they could live as husband and wife; and, finally, by his own admission it does appear that he had no means whereby he could support his wife at the time when he complains she would not come to Columbus to live with him. At this time the defendant had a place to live and was employed in Akron, which, under all the circumstances appearing, seems to be the only feasible arrangement that they could then carry out. The defendant at no place admits that the testimony of the plaintiff is in accord with the facts and the letters and exhibits offered by the plaintiff could not be corroborative as to subject matter essential to proof of gross neglect of duty.

Neglect of duty is not sufficient to support the ground of the statute; it must be gross neglect. Faust v Faust, 30 O. L. R. 67; Tiberghein v Tiberghein, 8 O. D. R. 464.

It should be observed that no witness was offered on behalf of the plaintiff tending in the slightest degree to corroborate his statements, except the testimony of James Burrier, and there is no admsision on the part of the defendant of that part of plaintiff's testimony which tended to establish gross neglect of duty. James Burrier was in the service with the plaintiff and went with him to several camps in this country and was with him abroad. He testifies very briefly, and by way of conclusion, that while in the service and while overseas the contents of some of the letters which the defendant had written to the plaintiff came to the witness' attention, in which defendant threatened divorce several times and accused him of chasing around with other women. He says also that these letters caused the plaintiff to pace the floor like a caged animal; that he first noticed the state of mind in camps in Mississippi and Tennessee. However, plaintiff testifies that during all the time that he was stationed in camps in this

country the relationship between himself and his wife was pleasant. At the time that the plaintiff was in the service abroad there was some basis for the wife making accusations against him, if she did, of chasing around with other women. Upon the whole, the testimony is of little, if any, probative value and not corroborative to any material degree of the subject matter of any of the findings of fact.

Special finding of fact No. 4 is to the effect that "she constantly nagged and complained to him about money matters without just cause, thereby failing to honor and respect her husband." The status of this record as to the true financial situation of these parties is very difficult to resolve. It is true that during plaintiff's service abroad he made an allotment to the defendant of $50.00 per month and testifies that he sent $20.00 per month additional. The defendant could not be criticized for spending the $50.00 because it was hers. The record is not convincing that the plaintiff sent the $20.00 per month to his wife to be saved for both of them. It is claimed by the wife that she sent much of the $20.00 monthly payment back to the plaintiff. He admits that in probability she sent him as much as $200.00.

The money which the parties received for the home which they bought before he went to the service was first placed in war bonds and later, as it dwindled, in banks. The plaintiff first testified that this money was placed in the name of the defendant and with the implication that she spent a good part of it and controlled it. The two bank books which were produced and introduced by the defendant disclosed that the accounts were carried in the plaintiff's name. The amount which was deposited in a bank in Tullahoma, Tennessee, was $400.00 less than the amount plaintiff claimed it to have been. He insisted that she had his money in a bank deposit in Akron, which she denied, and evidence of this account was not produced. The money which went into an automobile which the parties purchased was not identified definitely, each claiming that it belonged to him.

Upon the money controversy in the instances where the truth may be discerned in any disagreement between the parties it accords with the testimony of the defendant and is contradictory to that of the plaintiff. In one of the depositions a friend of the defendant, who worked with her, testified to her personal knowledge of many instances when she had sent money to the plaintiff. Probably the most convincing evidence which the record affords is found in statements made by the plaintiff in letters written, as late as December 3, 1945 and January 15, 1946, wherein he says:

"Dearest, thanks very, very much for the $150.00 check. I'll make it all up to you dear."

And,

"Whatever I owe you I promise you I'll repay every nickel as soon as I am able."

It may be conceded that this record presents an aggravated set of circumstances, and we have only quoted from it briefly, and that some of the conduct on the part of the defendant was unjustifiable and that some of her acts seem to be the result of a badly perturbed mind or of a highly disturbed nervous condition.

Whether or not the conduct and acts of the defendant occurring since the filing of the petition herein would constitute grounds of divorce, it is not for us to say in this proceeding. But it is obvious that they do not here, nor would they in any other action establish gross neglect of duty. We appreciate that courts at times and in certain instances, when it appears that it is highly improbable that the parties will again live together as husband and wife, stretch a point and release them from their marital obligations. This might afford a proper solution of the dilemma, but it is an exercise of arbitary power, unjustified and unauthorized under our established legal procedure.

The case of the plaintiff here fails completely upon analysis of the facts as relates to the essentials of proof.

There was no error in the admission of testimony offered by the plaintiff. The motions of the defendant for dismissal should have been sustained, as should the motion for new trial.

The judgment is against the manifest weight of the evidence and not supported by the evidence and therefore must be reversed and cause dismissed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.