**HAMILTON, Plaintiff-Appellee, v. HAMILTON, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2208.   Decided December 3, 1952.

Wasserman & Talbot, C. W. Magsig, Dayton, for plaintiff-appellee.

Gertrude Bucher, T. L. Barger, Dayton, for defendant-appellant.

## OPINION

By THE COURT:

This is an appeal on questions of law from the judgment of the Common Pleas Court of Montgomery County granting the plaintiff a decree of divorce and awarding alimony and support for a minor child.

The defendant-appellant assigns as error: That the judgment is contrary to law; that the judgment is not supported by sufficient evidence and is contrary to the weight of the evidence; that there was no corroboration of the evidence; that the court erred in the exclusion and admission of evidence; that the allowance for support of the child was excessive.

The plaintiff in her petition charged the defendant with gross neglect of duty, to which the defendant filed a general denial. Later the defendant filed a cross-petition in which he charged the plaintiff with gross neglect of duty and extreme cruelty. The court dismissed the cross-petition of the defendant and found that the defendant had been guilty of gross neglect of duty as charged in the petition. The court further found that the title to the property in which the parties had resided was in the plaintiff and decreed the property to her, together with the household goods, as alimony. The court awarded to the plaintiff the custody of the minor child, who is afflicted with epilepsy, and ordered the defendant to pay for support and maintenance, care and education, of said child, the sum of $18.00 per week. From this order the appeal was taken.

The assignments of error and briefs of counsel for the appellant relate to the issue made by the petition and the answer of the defendant. Was the defendant guilty of gross neglect of duty? The record, which has been carefully read and considered, is replete with accusations and denials on the part of both parties. The gist of the charge made by the plaintiff is that defendant was guilty of gross neglect of duty in that he failed to provide for the family. In the determination of this issue the court exercises a broad discretion, but it must be a sound discretion. **DeGarmo v. DeGarmo, 56 Abs 357.** Gross neglect denotes something more than mere neglect. **McGhee v. McGhee, 45 Abs 465; Brown v. Brown, 50 Abs 90, 94.** In **Porter, Exr. v. Lerch, 129 Oh St, 47,** the ninth paragraph of the syllabus is as follows:

"The term 'any gross neglect of duty' made one of the causes for divorce under §11979 GC, is elusive of concrete definition and its application as a cause for granting a divorce must depend upon the circumstances of the particular case."

In **Mark v. Mark, 145 Oh St, 301,** the third paragraph of the syllabus is as follows:

" 'Any gross neglect of duty' as used by §§11979 and 11997 GC, refers to an omission of legal duty."

**Sec. 11979 GC,** and related sections were repealed and re-enacted with amendments effective August 28, 1951. **Sec. 11979 GC,** which sets forth the grounds for divorce, is now §8003-1 GC. The petition in this case was filed May 8, 1951, and is therefore controlled by the provisions of the old sections of the code. However, the amended sections insofar as they relate to the issues presented here, carry the same provisions as in the old code.

We now consider the evidence to determine whether under the circumstances in this case the defendant was guilty of violating a legal duty. The parties were married in 1926. To this union four children were born. In the decree the court finds the two eldest to be twenty-one years of age, and the third child to be eighteen years of age, and the fourth child, an epileptic daughter, to be fourteen years of age. The three eldest children were all emancipated and lived outside the home several years prior to the institution of this action. In the early years of their married life the unsettled economic conditions existing in the country resulted in the usual "ups and downs" of family life. During the depression, the defendant lost his employment and was on W. P. A. During the entire period of their married life, according to the testimony of the plaintiff, she worked from time to time and contributed to the joint bank account; that family expenses were paid out of this account. A part of her employment was during the depression years and a part during the war period, at which time it was considered the patriotic duty of every woman who could do so, to be gainfully employed. The evidence as to the period of plaintiff's employment, the amount of her earnings, and whether she contributed all or any part to the joint bank account, is in conflict and in many respects very unsatisfactory. The defendant testified that he had steady employment at the Frigidaire from 1935 to 1942; that during the war period he was employed at the United Aircraft Products, and then was re-employed by the Frididaire. During this period the defendant earned good wages, but the plaintiff also at intervals worked during this same period. During this same period the parties changed residences frequently and owned several different pieces of real estate, the title to which was always taken in their joint names. In the spring of 1946, the parties sold their residence in Dayton and bought a summer resort in Wisconsin. At the time of the purchase

the resort had on it one cabin; other cabins were built through their joint efforts. This venture did not prove a financial success and the parties returned to Dayton and began to build the residence in which they lived at the time this action was instituted. The title to the vacant lots on which the residence was erected was taken in the name of the plaintiff. The defendant during the last few years followed the carpenter trade, working for two construction companies. While otherwise employed, the defendant began to construct their residence, largely through his own efforts, in October 1949. In the spring of 1950, they sold the resort in Wisconsin for $10,000.00. After paying the bills for the erection of the cabins and the mortgage on the resort, the balance of $5500.00 was applied towards the payment of material and the notes given in financing the residence under construction, and for the purchase of new household furniture. The parties occupied the residence in the summer of 1950, before it was completely finished. The record shows that the parties agreed that the residence would sell for $10,000.00, and that $2500.00 was expended for new furniture. The mortgage indebtedness amounts to approximately $3000.00.

After the parties returned from Wisconsin, they lived in the home of Mrs. Lochner, from March 1949 to November 1949. According to the testimony of Mrs. Lochner they got along agreeably; that the defendant worked steadily, and took overtime work; that the plaintiff worked, also, stating to Mrs. Lochner that she had too much time on her hands.

The pattern of family life, economic and otherwise, is all too common and presents a case where the wife was trying to augment the husband's income, not because he was indolent, shiftless, a spendthrift, a drunkard or a gambler, but because she desired the benefits of a higher standard of living and wanted more for the family than the husband's income would provide. During the trial more emphasis was placed on the employment of the plaintiff than on the employment of the defendant.

What meager evidence is found in the record concerning the husband's employment shows that during the last few years while employed as a carpenter, the union rate was $2.50 per hour for a forty hour week and $5.00 per hour for over-time; the defendant was a member of the union. A part of this time he earned $1.55 per hour. In the winter time, due to bad weather conditions, he was not employed full time. This situation prevailed generally in the construction business. There is not a scintilla of evidence to show that his earnings were expended for any purpose other than for the

benefit of the family. There is no evidence that he indulged in any bad habits which consumed his earnings. During the last few years, after the three eldest children became emancipated, the estate created through their joint efforts increased. It is extremely difficult to extract from the record any definite statement which caused the estrangement. On page 16 of the record on direct examination, the plaintiff testified that they worked together to pay their obligations up until the trouble started. On the same page of the record on direct examination, she stated that they never kept a record as to the amount of money received or how it was expended; that they both worked and used the money as man and wife would do to run a home. On page 100 of the record, one of the daughters in answering the question as to why her mother was employed at times, testified: "Mother has always liked clothes as any other woman; she just liked extras we didn't have." On the same page this daughter in response to the question as to whether she knew any occasion when her father was unemployed, testified: "Not while I was home." This testimony is typical of much of the testimony of the various witnesses running throughout the entire case. The husband testified that the wife worked because she wanted things he couldn't afford.

Usually, the grounds for divorce arise prior to the estrangement or separation. In this case it is difficult to point to any evidence which gives rise to grounds for divorce prior to the estrangement or separation, or thereafter. With respect to the charge of the failure to provide, the wife on page 41, while on cross-examination, testified as follows:

"Q. Did he support you consistently all the time except when he was out of work?

"A. Except when we were having trouble he did."

The record shows that the plaintiff filed an action for divorce in May 1950. In October 1950, a separation agreement was executed. In November 1950, the parties became reconciled, whereupon the action was dismissed. The record is entirely silent as to the thing which provoked the filing of the action, what were the facts alleged, what happened between the parties from May 1950 to November 1950, who induced or the reason underlying the reconciliation. From November 1950 to May 1951, the parties lived under the same roof with their minor daughter. The record shows that beginning in January, 1951, and continuing to May 1951, the plaintiff refused to converse with the defendant, although living in the same home. During all of this time the defendant was steadily employed. In May 1951, while the defendant

was living in the home, plaintiff filed this action. She requested a court order to require the defendant to vacate the premises. This, he did voluntarily and no order was made.

A more detailed analysis of the evidence would serve no useful purpose. The court has attempted to detail the material aspects of the evidence. In our opinion the evidence does not present a case of gross neglect of duty. What caused the estrangement, other than incompatibility, is not shown by the record. The court refused defendant's counsel at one point to cross-examine the plaintiff with respect to her associations with male companions. While this line of examination may not have resulted in evidence of any probative value, on the issue made, we believe that the court committed prejudicial error in refusing this line of cross-examination.

The record fails to present any one isolated act on the part of the defendant or any continuous course of conduct which would support the charge of gross neglect of duty.

This record presents a situation where the words used by this court in **Brown v. Brown, 50 Abs 90,** at **page 96,** may be appropriately applied:

"We appreciate that courts at times and in certain instances, when it appears that it is highly improbable that the parties will again live together as husband and wife, stretch a point and release them from their marital obligations. This might afford a proper solution of the dilemma, but it is an exercise of arbitrary power, unjustified and unauthorized under our established legal procedure.

"The case of the plaintiff here fails completely upon analysis of the facts as relates to the essentials of proof."

In our opinion the judgment is contrary to the manifest weight of the evidence, is not supported by sufficient evidence and is contrary to law. The question of the lack of corroboration is of no moment. The evidence given by the plaintiff was to some extent corroborated, but the evidence as given and as corroborated was insufficient to make a case of gross neglect of duty. We believe the trial court improperly sustained the objection to a line of cross-examination of the plaintiff, which ruling was prejudicial to the defendant.

The judgment granting a divorce to the plaintiff will be reversed. We also reverse the order of allowance for the support of the minor child, and remand the case to the trial court for further proceedings according to law on this particular issue.

Judgment accordingly.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.