KENNEDY, APPELLEE, *v.* KENNEDY, APPELLANT.

(No. 268—Decided December 14, 1959.)

*Mr. Oscar L. Dunford* and *Mr. Edward B. Osborne*, for appellee.
*Mr. Robert D. Leggett*, for appellant.

O'CONNELL, J. The evidence in this case is that the parties were married in June 1952; that they had two minor children; that the appellant was the natural mother of these children and the appellee had adopted them; that the appellee filed suit for divorce against the appellant on October 30, 1958, on the grounds of gross neglect; that an answer and cross-petition were filed by the appellant on November 22, 1958; and that a decree for divorce on the petition was granted on February 2, 1959.

The evidence also includes a separation agreement, signed

by both parties and dated October 27, 1958, and a repudiation of the agreement by the appellant on the grounds of fraud.

The Ohio statute (Section 3105.01, Revised Code) sets forth the grounds for divorce. The appellee based his action on the ground of gross neglect of duties. To sustain his charge of gross neglect, the appellee testified as follows:

"Q. I would like to ask you what was the trouble between you and your wife? A. Well, truthfully, I don't think we were meant for each other. We were always bickering and there was just no happiness on either side. We both admitted that.

"Q. Was there constant arguing? A. That is right.

"Q. There was constant friction in the home? A. Yes.

"Q. Did you make an honest effort to make a go of the marriage? A. Yes.

"Q. Did you at any time separate before this action? A. No."

Called to testify on behalf of the appellee was Philip Huston. After stating his name, occupation, the length of his acquaintanceship with the appellee, the proximity of his residence to that of the parties to this action, his knowledge that the appellant and the appellee were husband and wife, his knowledge concerning the date of their marriage and his visiting their home, he was asked the following:

"Q. Do you have any knowledge concerning their marital difficulties? A. No.

"Q. Do you know whether or not they are living separate and apart? A. Yes."

It is obvious from this testimony that the appellee has not proved gross neglect.

Now gross neglect does not mean simple neglect. The general connotation of the word, *gross*, is *large* or *great*. As 27A Corpus Juris Secundum, 134, Section 40, says: "There must not only be a default or omission to perform a marital duty, but the act complained of must be attended by circumstances of indignities or aggravation."

And in *Berry* v. *Berry*, 18 N. P. (N. S.), 521, at 529, 27 O. D., 242, it was stated that "the word 'gross' in the phrase 'gross neglect of duty' is not merely superfluous. It is significant of the character of the neglect of duty that warrants a divorce. It

does not mean a partial or a total neglect of duty. It is more than either of these facts.''

And this court so holds a failure to prove gross neglect of duty in this case.

The opinion of the court is in accordance with the law as it is stated in 17 Ohio Jurisprudence (2d), 678, Section 20, as follows: ''A judgment granting a divorce on the ground of gross neglect of duty, however, will be reversed where the record fails to present any one isolated act on the part of the defendant or any continuous course of conduct which would support the charge of gross neglect of duty.'' Moreover, there is nothing in the record to show that the appellee had lived in the state of Ohio for one year preceding the filing of this action.

The most that the evidence in this case shows is an incompatibility, and, though in some states a divorce may be granted for this reason, in Ohio incompatibility is not grounds for divorce. The sixth paragraph of the syllabus in *Burke* v. *Burke*, 36 Ohio App., 551, 173 N. E., 637, is as follows: ''Incompatibility, disappointments in social and financial aspirations and mutual desire of parties to obtain their freedom from matrimonial bonds are not grounds for divorce in Ohio.''

Thus, the law of Ohio, which demands a strict compliance with the statute governing the granting of divorces, simply reflects the general public policy as to marriage and divorce. As it is put in 17 American Jurisprudence, 262, Section 12, ''The public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, and to prevent separation. This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight or trivial causes, or by the agreement of the husband and wife, or in any case except on full and satisfactory proof of such facts as the Legislature has declared to be cause for divorce.''

The judgment of the Court of Common Pleas of Clermont County is reversed and the cause remanded to that court for further proceedings according to law.

*Judgment reversed.*

MATTHEWS, P. J., and LONG, J., concur.