GLIMCHER, APPELLEE, *v.* GLIMCHER, APPELLANT.

[Cite as Glimcher v. Glimcher (1971),
29 Ohio App. 2d 55.]

(No. 71-112—Decided September 21, 1971.)

*Mr. George W. Gross,* for appellee.

*Messrs. Tyack, Scott & Colley* and *Mr. Joseph G. Rotondo,* for appellant.

WHITESIDE, J. This is an appeal upon questions of law from a judgment of the Court of Common Pleas of Franklin County, Division of Domestic Relations, granting the petition of the plaintiff, appellee herein, for a divorce from defendant, appellant herein, upon the grounds of gross neglect of duty, and dismissing the cross-complaint of defendant for a divorce upon the grounds of gross neglect of duty and extreme cruelty.

Defendant has assigned a single assignment of error, as follows:

"The finding of the court that the defendant was guilty of gross neglect of duty is not supported by the evidence and is contrary to law."

The parties were married on November 25, 1954, and have three children, ages 14, 11 and 7. Plaintiff filed his petition, seeking a divorce from defendant upon the grounds of gross neglect of duty, on February 18, 1970. Defendant filed an answer thereto. On January 25, 1971, defendant filed a cross-complaint for divorce upon the grounds of gross neglect of duty and extreme cruelty. The

trial was commenced on February 5, 1971, with the waiver by plaintiff of the statutory waiting period and an entry of a general denial, neither of which were in writing. However, no error is assigned with regard to these procedural matters.

The trial was lengthy, and was concluded on February 26, 1971. The bill of execeptions contains more than 1,400 pages, and there were more than 60 exhibits admitted in evidence.

At the request of defendant, the trial court filed separate findings of fact and conclusions of law on March 26, 1971. The pertinent finding of fact is finding of fact number 4, which reads as follows:

"4. The defendant neglected her duties and responsibilities as a wife and mother, in that she:

"(a) failed to maintain trust and confidence in her husband's fidelity and became jealous of attentions plaintiff showed his sister-in-law, Diane. The defendant then, without abandoning her jealousy of the sister-in-law, became obsessed with the idea that the defendant (*sic*) was having an 'abnormal relationship' with a family friend of long standing, one Patricia Katz. This obsession manifest itself by constant and continuous discussions by the defendant with her family and friends. The evidence disclosed that there was no basis to justify the defendant's jealousy and her attitude toward plaintiff's relationship with his sister-in-law or Patricia Katz.

"(b) failed to encourage and support her husband in his efforts to support the family, but was instead, disruptive of plaintiff's business by harassing telephone calls, and on one occasion a trip to the office which was disruptive and that as a result, the plaintiff was asked to move his office, which affected his income adversely.

"(c) The plaintiff adequately provided for his family; the fact, to the extent that he was, as brought out on cross-examination, using funds which perhaps should be held in a reserve for depreciation of his properties, but the defendant made numerous remarks to friends and family that she was disappointed in the plaintiff, financially; that he

should be more like his brother, Herbert. in accumulating material possessions; complained about not having a full-time maid, although defendant had a part-time cleaning woman, part-time ironing service, and a live-in girl who helped some with the household chores and baby sitting.

"(d) The defendant did not devote sufficient of her own time to housekeeping and personal care of the children, but rather spent considerable time playing cards and socializing.

"(e) Upon at least two occasions, the defendant feigned suicide to attract attention to herself, which action had a disturbing and unnerving effect upon the minor children of the parties and the plaintiff.

"(f) Defendant refused to keep a kosher home, even though plaintiff requested her to do so."

After a careful review of the voluminous record, we conclude that the first assignment of error is well taken in that the findings of the trial court of neglect on the part of the defendant do not constitute gross neglect of duty and are not supported by the evidence.

A divorce was sought and granted in this case upon the sole ground of gross neglect of duty. As stated by the Supreme Court in the ninth paragraph of a syllabus of *Porter* v. *Lerch* (1934), 129 Ohio St. 47:

"The term 'any gross neglect of duty' made one of the causes for divorce under Section 11979, General Code, is elusive of concrete definition and its application as a cause for granting a divorce must depend upon the circumstances of the particular case."

Also pertinent is the third paragraph of a syllabus of *Mark* v. *Mark* (1945), 145 Ohio St. 301:

" 'Any gross neglect of duty' as used in Sections 11979 and 11997, General Code, refers to an omission of legal duty."

The basic duties of a husband and wife toward each other are set forth in R. C. 3103.01, which reads, as follows:

"Husband and wife contract towards each other obligations of mutual respect, fidelity, and support."

R. C. 3103.02 provides that the husband is the head

of the family and may choose any reasonable place or mode of living and the wife must conform thereto. R. C. 3103.03 requires the husband to support himself, his wife and children, and requires the wife to assist him to the extent that he is unable to do so.

This court has had prior occasions to consider what constitutes gross neglect of duty. In the unreported case of *Miller* v. *Miller*, No. 8947, decided March 19, 1968, Judge Troop stated:

"It is noted that neglect to be ground for a divorce in Ohio must be 'gross' neglect. Text and decisions suggest that synonymous terms are considerable, flagrant, heinous, odious, atrocious, shameful, and despicable. However strong the modifying term, it is clear that gross neglect is substantially more than plain, ordinary neglect. * * *"

In the unreported case of *Birkenback* v. *Birkenback*, No. 8907, decided April 2, 1968, it is stated:

"However, the mere fact that a couple has, after 25 years, developed animosities and at least temporarily lost any meaningful relationship is not gross neglect of duty. We are well aware that it is futile for the law to attempt to deal with such personal human relationships. However, marriage and divorce have social consequences in addition to their effect upon the parties. The state has a legitimate interest in the control of both marriage and divorce.* * *"

The trial court, as its second conclusion of law, found as follows:

"2. The facts found constituted gross neglect of marital duties by the defendant and, therefore, grounds for divorce. The institution of marriage is founded on mutual love, respect, trust and confidence. When any one of these ingredients of a partnership has ceased to exist the marriage, as a partnership, can no longer exist."

We do not quarrel with the statement of the trial court that marriage must be founded on mutual love, respect, trust and confidence. However, the finding that when any one of these ingredients has ceased to exist the marriage can no longer exist is not a correct statement of the law of Ohio. Such statement might be a correct statement of

law if incompatibility were a ground of divorce in Ohio, or if so-called "no fault" divorce were established by law in Ohio. The conclusion of law by the trial court suggests that the trial court failed to distinguish between incompatibility and gross neglect of duty as grounds for divorce.

The syllabus of *Kennedy* v. *Kennedy* (1959), 111 Ohio App. 432, reads as follows:

"1. Incompatibility is not a ground for divorce in Ohio.

"2. A judgment granting a divorce on the ground of gross neglect of duty will be reversed on appeal where the record presents only evidence of incompatibility."

As stated above, we hold that the facts found by the trial court, taken either singly or as a unit, do not constitute gross neglect of duty on the part of the defendant although there is some evidence of incompatibility and of simple neglect of duty on the part of the defendant. We shall separately consider each of the findings of the trial court.

The first finding was that the defendant failed to maintain trust and confidence in her husband's fidelity. The finding of the trial court in this regard is that defendant became jealous of attention the plaintiff showed both to his sister-in-law and a family friend of long-standing. The trial court characterized this as an obsession manifested by constant and continuous discussions with family and friends. There is evidence that defendant discussed plaintiff's attentions with her family and plaintiff's family, but primarily (except with plaintiff's mother) after this action was filed. With the exception of the "family friend," there is no indication that defendant discussed it with her friends prior to the plaintiff filing his petition for divorce. Rather, most of the witnesses for both parties testified that defendant had not discussed her jealousy with them. There is no evidence to support a finding of "constant and continuous discussions" prior to the filing of this action.

The trial court found further that there was no basis to justify the defendant's jealousy. If evidence of immoral conduct is necessary to justify such jealousy, the trial

court is correct and jealousy probably never can be "justified." However, the evidence indicated that, although plaintiff was aware of defendant's objections to the "platonic" attention paid by plaintiff to the "other women," plaintiff persisted in such conduct. A husband's obligation of fidelity is not limited to sexual fidelity. A strict observance of the husband's obligation of fidelity requires that he refrain from even platonic displays of affection to other women if his wife objects to such displays of affection. While such breach of duty would ordinarily constitute simple neglect rather than gross neglect of duty, it will most certainly breed jealousy on the part of the wife if she has any tendency in that direction.

Futhermore, the evidence indicates that the relationship between plaintiff and the "family friend" was a mater of common gossip. Plaintiff and the "family friend" both contended (without personal knowledge) that such gossip originated from the defendant; however, other witnesses testified that the attentions paid by plaintiff to the "family friend" were apparent to everyone. The "family friend" also filed an action for divorce shortly after this action was filed, and is now divorced.

In any event, for a wife to become jealous of attentions her husband pays to other women is not gross neglect of duty on the part of the wife.

The second finding by the trial court is that the defendant failed to encourage and support her husband in his efforts to support the family but, instead, was disruptive of the plaintiff's business by harassing telephone calls and a disruptive trip to his office. There is no evidence that defendant failed to encourage and support her husband in his efforts to support the family. On the contrary, the evidence indicated that, throughout the marriage, the defendant received assistance from her parents in support of the family. While there is evidence of numerous telephone calls to plaintiff at his office, the evidence indicates that such calls were more disruptive of plaintiff's brother's business rather than plaintiff's business. The trip to the office referred to was occasioned by

defendant's observing the "family friend" at the office. As a result, plaintiff's brother asked plaintiff to move his office elsewhere, which was done.

While the trial court found that such move affected plaintiff's income adversely, the only evidence to support this finding was plaintiff's statement to this effect. The incident occurred in early 1969 and plaintiff's income tax returns for 1969 and 1968 indicate that plaintiff's income for 1969 was greater than in 1968, although both years resulted in a net loss.

The third finding of the trial court was that the defendant made numerous remarks to family and friends that she was disappointed in the plaintiff financially. We do not condone defendant's conduct in this regard. However, we do not feel that a wife's complaint that her husband is not providing as high a standard of living as she would like constitutes gross neglect of duty, although it might constitute simple neglect. Furthermore, the evidence indicates that throughout the marriage the parties were assisted financially by both their families.

The fourth finding of the trial court was that the defendant did not devote sufficient time to housekeeping and personal care of the children, but spent considerable time playing cards and socializing. This does not constitute gross neglect of duty. For a wife to play cards and socialize is not neglect of duty any more than it is neglect of duty for a husband to spend time playing golf. While plaintiff testified that his wife did virtually no housekeeping, there was no corroborating testimony. A wife is not required to be a good housekeeper in order to be a dutiful wife. Neglect by a wife of her housekeeping and child care duties constitutes gross neglect of duty only where such neglect is flagrant, heinous, odious, atrocious, shameful, or despicable. The evidence in this case did not justify a finding, nor did the finding of the trial court reflect, that any neglect by defendant of her housekeeping and child care duties were of this nature.

The fifth finding by the trial court was that the defendant, on at least two occasions, feigned suicide to at-

tract attention to herself. While feigning or attempting suicide may, under some circumstances, constitute extreme cruelty, it does not constitute gross neglect of duty. A person may feign or attempt suicide for many reasons, among which are to cause anguish to another and to obtain attention from someone to fulfill emotional needs. The former might constitute extreme cruelty; the latter probably would not. The trial court found defendant's alleged acts to be in the latter category. However, neither constitutes gross neglect of duty.

Furthermore, Civil Rule 75(M) provides that divorce shall not be granted upon the testimony or admission of a party not supported by other credible evidence. This finding was supported only by testimony of plaintiff, corroborated only by testimony of an out-of-court admission by defendant. The rule precludes divorce being granted upon the admission of a party, whether such admission be in or out of court. Evidence of an out-of-court admission by a party is not "other credible evidence" within the meaning of Rule 75(M). Accordingly, the finding of the trial court that the defendant feigned suicide is not supported by the evidence.

The sixth finding by the trial court was that the defendant refused to keep a kosher home, although plaintiff requested her to do so. Plaintiff's complaint in this regard was that defendant refused to keep a kosher kitchen. Testimony introduced on behalf of plaintiff indicated that the importance of the keeping of a kosher kitchen varied with the person, and that most of the Orthodox Jewish families, some of the Conservative Jewish families, and none of the Reformed Jewish families maintain a kosher kitchen. The evidence indicated further that plaintiff's family had maintained a kosher kitchen but that defendant's family had not.

Plaintiff testified in regard to this, in part as follows:

"Q. Did you request of your wife that she keep a Kosher kitchen?

"A. Yes, I did. At the onset of our marriage, we did have a Kosher home. However, there was a big discussion

between Carol's mother and Carol and myself. Her mother said it was extremely ridiculous, that those were things of the past and it was not necessary and it was more expensive to buy Kosher meats than non-Kosher meats and there is no need why Carol would have to do that. "" * * *

"Q. All right. Now, did the fact that she did not keep a Kosher kitchen bother you particularly in any way?

"A. It has always bothered me. I was raised as an Orthodox Jew. I am presently a Conservative Jew. I am not the most religious person in the world. * * *

"Q. Well, answer this, was there a cessation in this keeping this type of kitchen? Was this discussed upon other occasions or was it abandoned?

"A. It was constantly a point of discussion and there was constant refusal on Carol's part because of the extra effort necessary to maintain a Kosher home with separate dishes and separate silverware and pots and pans and so on down the line."

As a general rule, religious differences between husband and wife are not grounds for divorce. 17 Ohio Jurisprudence 2d 674, Divorce and Separation, Section 18. While it is conceivable that conduct in observance of one spouse's religion might, in some unusual circumstance, result in gross neglect of duty, the nonobservance by one spouse of the other spouse's religious beliefs can never constitute gross neglect of duty. R. C. 3103.02 has no application in the observance of religious beliefs or traditions.

While a Jewish wife may enhance marital harmony by acceding to her husband's strong belief that a kosher kitchen should be maintained, she is not guilty of gross neglect of duty where her religious belief is that such tradition is unnecessary in the observance of the Jewish faith. Even if the refusal of a Jewish wife to keep a kosher home constitutes neglect of duty, it cannot be gross neglect of duty.

While the record is lengthy, most of the testimony concerns itself with custody and financial issues. Plaintiff

called two of the parties' three children as witnesses, daughters aged 14 and 11 years. We do not condone the practice of a parent causing minor children to testify against the other parent in a divorce action. Testimony of the children was not limited to their desires as to which parent they would prefer to live with, but they were questioned by both counsel with regard to some of the issues involved. We do not condone this action on the part of either counsel.

Neither party entered a formal objection to the testimony of the children, nor attempted to limit such testimony. Under such circumstances, it is well within the province of the trial court to exercise the power set forth in Civil Rule 75(B) (2) and appoint a guardian *ad litem* to protect the interests of the children. Such action is discretionary with the trial court when he deems it to be essential to protect the interests of the children. We raise this *sua sponte,* since there was no one to protect the interests of the children either in the trial court or in this court. While it might not have constituted an abuse of discretion on the part of the trial court to determine not to appoint a guardian *ad litem* for the children, the trial court should have considered the question under the circumstances herein involved.

As we indicated above, while the evidence did not show gross neglect of duty, it might have been found to have shown incompatibility, which is not a ground of divorce in Ohio. In a case involving some issues similar to some of the issues herein, this court stated in *Brown* v. *Brown* (1947), 76 N. E. 2d 730, 733:

"It may be conceded that this record presents an aggravated set of circumstances, and we have only quoted from it briefly, and that some of the conduct on the part of the defendant was unjustifiable and that some of her acts seem to be the result of a badly perturbed mind or of a highly disturbed nervous condition.

"* * * We appreciate that courts at times and in certain instances, when it appears that it is highly improbable that the parties will again live together as husband and

wife, stretch a point and release them from their marital obligations. This might afford a proper solution of the dilemma, but it is an exercise of arbitrary power, unjustified and unauthorized under our established legal procedure.''

In a contested divorce case wherein both parties seek a divorce, and the evidence presents a clear case of incompatibility but is insufficient to prove any legal ground for divorce, the trial court may be tempted to grant a divorce to the party he feels is least responsible for the incompatibility as a practical solution to the dilemma. In most instances, this will satisfy both parties, in that they will have achieved that which they both desired, namely, a divorce from each other. Even an appellate court may be tempted to reach the same practical solution where the party against whom the divorce was granted seeks to have the appellate court set aside the decree of divorce granted to the other spouse, and order a decree of divorce in favor of the appellant spouse instead. Such a practical solution, however, is not in accordance with the law of Ohio. It is the duty of this court to apply the law as it exists, rather than attempt to find a practical solution for the parties' marital difficulties.

There was evidence of some neglect of duty, but not gross neglect, on the part of both plaintiff and defendant, and there was evidence of incompatibility and evidence of cruelty, but not extreme, on the part of both. Whether the parties can, or desire to, reconcile their differences and again live as husband and wife in observance of the marriage vows they exchanged nearly 17 years ago, this court has no way of knowing. Nor is it an issue for this court to decide or to be concerned with. This is a problem that must be resolved by the parties themselves. This court is limited to a determination of whether or not the evidence was sufficient to support a finding of gross neglect of duty on the part of the defendant.

For the foregoing reasons, we have concluded that the evidence does not support a finding of gross neglect of duty on the part of defendant, and that the judgment of the trial court is contrary to law.

Accordingly, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed, the judgment and decree of that court is set aside and vacated, and final judgment is entered dismissing plaintiff's petition for divorce, as well as defendant's cross-complaint for divorce.

*Judgment reversed.*

TROOP, P. J., concurs.
HOLMES, J., dissents.

HOLMES, J., dissenting. I must dissent from the majority decision of my colleagues in that I feel there was a substantial amount of evidence presented by the plaintiff, upon which the trial court could legally base its judgment of divorce for the plaintiff on the ground of gross neglect of duty of the defendant.

The testimony of the plaintiff's brother sets forth the fact that the defendant called the jointly shared office of the brothers on many occasions. Plaintiff's brother stated such calls to be a minimum of ten per day, and that some were of the "call and hang up" variety.

In addition, the defendant presented herself at the office on a number of occasions, apparently upsetting the office routine in the process. It was testified that on one such occasion the defendant stormed into the office and proceeded to question her husband's ancestry, apparently within the hearing of those in the office.

All of such activity on the part of the defendant occasioned the plaintiff being removed from this rent-free office which was being provided by his brother in addition to phone service, office supplies, furnishings and typing service.

The record discloses also that on another occasion while the parties hereto were attending the Cedar Point recreation area, the defendant spoke profanely to her husband in a most unwifely manner, such profane statements being overheard by the couple accompanying the parties.

There also was evidence of rather constant indications or accusations by the defendant of mistrust of the

plaintiff, which accusations were not shown to be well founded.

R. C. 3103.01 provides that "husband and wife contract towards each other obligations of mutual respect, fidelity, and support." In reading the record, 1 found that the plaintiff presented proof relative to a notable absence of respect for this plaintiff by the defendant.

As set forth in *Weinstein* v. *Weinstein* (1962), 90 Ohio Law Abs. 199, a large measure of discretion is granted to the trial court to determine the sufficiency of the evidence requisite to granting a divorce, and a reviewing court passing on an assignment of error that a decree of divorce is against the manifest weight of the evidence is warranted in setting aside the decree only when the record does not disclose any substantial evidence which reasonably supports the judgment.

As stated in the third paragraph of the headnotes of *Smith* v. *Smith* (1933), 15 Ohio Law Abs. 536:

"A reviewing court in passing upon the action of the trial court in a divorce case cannot disturb that action unless the judgment is so manifestly against the weight of evidence as to shock the conscience."

In reviewing the record, I believe that such record discloses substantial evidence which reasonably supports the judgment of the trial court on the issue of gross neglect of duty. The judgment should be affirmed.