LANGER, Appellee,

v.

LANGER, Appellant.

[Cite as *Langer v. Langer* (1997), 123 Ohio App.3d 348.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16243.

Decided Sept. 26, 1997.

350

*L. Anthony Lush*, for appellee.

*Fred M. Izenson*, for appellant.

---

GRADY, Judge.

This is an appeal from a summary judgment that was granted by the court of common pleas, domestic relations division, in an action for divorce. The judgment decided but one issue: that the marriage of the parties had terminated *de facto* prior to the final hearing in the action, which has yet to be held.

On May 31, 1995, Jennifer L. Langer and Ned L. Langer executed an antenuptial agreement. That agreement provided that any property either owned before marriage would remain that party's separate property, and stated:

"To make this effective, each party hereby waives, renounces and relinquishes all legal and equitable claims and rights, actual and implied and contingent, that he or she may now have in the separate property of the other or that he or she may acquire in that property if the parties become married to one another, except these rights granted by this agreement.

"Notwithstanding the foregoing paragraphs of this Section 2 (Property Owned Prior To Marriage), if a marital dispute arises between the parties which culminates in a divorce or dissolution of marriage, or a legal separation, Jennifer shall be entitled to receive from Lee, as a lump sum property settlement, the sum of $20,000 per year for each full year of the marriage, in addition to whatever else she would be entitled to under the terms of this agreement."

Ned and Jennifer[1] were married on June 3, 1995. On March 12, 1996, Ned assaulted Jennifer and was removed from their marital residence. Since then, Ned and Jennifer have lived apart. Ned was subsequently convicted of domestic violence on his plea of guilty to that charge.

Ned filed a complaint for divorce on April 25, 1996, attaching a copy of the antenuptial agreement. Jennifer filed an answer and counterclaim for divorce, to which Ned filed a responsive pleading. Jennifer's counterclaim has since been withdrawn.

Ned filed a motion for summary judgment, asking the court to find that Jennifer is entitled to no money pursuant to the provision of the antenuptial agreement quoted above because the marriage had lasted less than one full year. Ned argued that the marriage had terminated *de facto* when he was removed

---

1. For purposes of economy, the parties will be identified by their first names. The antenuptial agreement referred to Ned as "Lee."

from the home on March 12, 1996, which was less than one year after their marriage on June 3, 1995. Jennifer filed a motion contra, arguing that the provision should not be so enforced because it would allow Ned to profit from his own admitted wrongdoing.

The trial court granted Ned's motion for summary judgment, stating:

"Both parties acknowledge the validity of the prenuptial agreement signed on May 31, 1995. The parties dispute the issue of the duration of the marriage. The court finds the duration of the marriage to be from June 3, 1995 to March 12, 1996. The latter date is the date on which plaintiff admits respondent was removed from the marital premises as the result of domestic violence. It is on this date that the parties ceased to operate as a marital unit. Plaintiff's argument that the termination date of the marriage should be determined differently due to defendant's alleged violence upon her raises serious issues, but in the wrong forum. A tort action for monetary damages for alleged injuries must be pursued by separate action in the General Division of this court."

Jennifer filed a timely notice of appeal from the court's order. She now presents a single assignment of error, which states:

"The trial court abused its discretion in determining, as a matter of law, in its entry granting summary judgment to appellee, the equitable date of the termination of the marriage, pursuant to Ohio Revised Code § 3105.171 was March 12, 1996."

As an initial matter, we must determine an objection in Ned's brief that this court lacks jurisdiction to review the summary judgment from which this appeal is taken because it is not a final order, as that is defined by R.C. 2505.02.

The appellate jurisdiction of this court is limited to review of final orders and judgments. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 540 N.E.2d 266. Pursuant to R.C. 2505.02, "final orders" include, *inter alia,* "an order that affects a substantial right made in a special proceeding." "A court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right." *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64, 67. A "special proceeding" is an action created by statute and not recognized in common law or in equity. *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213.

Actions for divorce are provided by statute. R.C. Chapter 3105. Therefore, and because divorce actions were not provided by common law or in equity, a divorce action is a "special proceeding" for purposes of R.C. 2505.02 and *Polikoff.* *State ex rel. Papp v. James* (1994), 69 Ohio St.3d 373, 632 N.E.2d 889. The court's summary judgment *affected* Jennifer's rights under the antenuptial

agreement to receive a payment of $20,000 from Ned. Therefore, it affected a substantial right and it is final for purposes of R.C. 2505.02.

The antenuptial agreement obligated Ned to pay Jennifer a lump sum property settlement in exchange for Jennifer's waiver of any claim she might otherwise acquire to a share of Ned's property by reason of and/or during their marriage. The lump sum is to be calculated at the rate of "$20,000 per year for each full year of the marriage." Therefore, the duration of their marriage is critical to determining whether Ned must pay any monies to Jennifer and, if so, how much.

"Marriage" is a status created by operation of law. It is a legal relationship that the parties may not by contract alter. R.C. 3103.06. Marriage is not terminable at the will of either party or by their mutual agreement. *Burke v. Burke* (1930), 36 Ohio App. 551, 173 N.E. 637. It is terminable only by death or the presumption of death, or by judicial decree of divorce, dissolution, or annulment.

A domestic relations court that determines an action for divorce is required by R.C. 3105.171(B) to order the parties' marital property divided equitably between them. Marital property includes any property, real or personal, acquired by either spouse "during the marriage." R.C. 3105.171(A)(3)(a)(i). Therefore, the date on which the marriage terminates *de jure* ordinarily is controlling of a court's decision when it determines and divides marital property.

In *Berish v. Berish* (1982), 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 183, the Supreme Court held that, when dividing the parties rights in a jointly owned asset, a domestic relations court may apply an exception to the *de jure* termination date to decide when a marriage ends.

"In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or *de facto* termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties." *Id.* at 321, 23 O.O.3d at 298, 432 N.E.2d at 185.

The rule of *Berish* is now provided by statute. R.C. 3105.171 requires the equitable division of property acquired during marriage and states, at Division (A)(2):

" 'During the marriage' means whichever of the following is applicable:

"(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

"(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court."

A distinction exists between public rights, which are conferred by operation of law, and private rights, which are created by contract. Unless a right created by contract is prohibited by law, the party who holds the right is entitled to the benefit of it, and absent certain exceptions the court may not adjust enforcement of that right to suit the equities involved. The court is not so limited when enforcing a right conferred by law, particularly the right to share equally in marital property upon a divorce, which is expressly made the subject of an equitable determination.

Ned and Jennifer waived any claim each might have had in the property of the other pursuant to the terms of their antenuptial agreement. Because the court was thereby relieved of the need to determine and divide their marital property, the court had no basis to apply the *de facto* termination exception of *Berish v. Berish, supra,* and R.C. 3105.171(A)(2), which is an equitable remedy. The court was required only to construe the antenuptial agreement, which is a contract, and to enforce the rights and duties it created. Jennifer was entitled to the benefit of the bargain she made, notwithstanding the fact that absent their antenuptial agreement she may have been entitled to little if any property by reason of her marriage to Ned.

We find that the trial court erred when it applied the alternative valuation-date rule for division of marital property to hold that the *marriage* itself had terminated, and then employed that finding to deny Jennifer the right to receive the lump sum payment which she is due pursuant to the antenuptial agreement. Her right, and Ned's obligation, is determined only by a termination of their marriage *de jure,* which on this record will occur with the final hearing on the complaint for divorce that Ned has filed and a decree entered pursuant to it.

This is not to say that the court was powerless to relieve Ned of his contract obligation. Courts of law and courts of equity will decline to enforce obligations created by contract if the contract is illegal or the consideration given for it is illegal, immoral, or against public policy. 41 Ohio Jurisprudence 3d (1983), Equity, Section 49. That is not the claim here. Instead, Ned attempts to employ the "*de facto* termination" exception, which is an equitable form of relief, to limit or extinguish his contract obligation by reason of the parties' separation.

It is a fundamental rule of equity that he who seeks equity should not be allowed to profit from his own wrongdoing. *Klaustermeyer v. Cleveland Trust Co.* (1913), 89 Ohio St. 142, 105 N.E. 278. It is also fundamental that he who seeks equity must do equity, a principle of especial force as applied to obligations that are imposed by contract. 41 Ohio Jurisprudence 3d (1983), Equity, Section 66. Furthermore,

"In order to have any standing for a court to exercise its equity jurisdiction a complainant must come with clean hands, and if he has violated conscience or good faith or has acted fraudulently, or by deceit or unfair means has gained an unfair advantage, equity will deny him relief. A complainant in equity who founds his cause upon a transaction in respect of which he is himself guilty of unconscionable conduct cannot have any relief whatsoever, for he is personally barred, under the maxim 'he who comes into equity must come with clean hands,' or, 'he that hath committed inequity shall not have equity.' Where the conduct of the plaintiff with respect to the suit or its subject matter is unconscionable, even though not illegal, the maxim applies." *Id.* at Section 67, 374–375.

The foregoing considerations operate to bar Ned from the relief that he sought in his motion for summary judgment because the grounds for that relief, his separation from Jennifer, is a direct product of an act of criminal wrongdoing for which he stands convicted by law. Ned cannot profit from his own misconduct to avoid the duty imposed by the promise to Jennifer that he made voluntarily in their private agreement. Therefore, and to the extent that it relieved Ned of his contract obligation on that basis, the trial court's order was an abuse of discretion.

The assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed
and cause remanded.*

FREDERICK N. YOUNG, P.J., and BROGAN, J., concur.