THOMAS, APPELLEE, *v.* THOMAS, APPELLANT.

(No. 81-CA-2815—Decided February 18, 1982.)

*Messrs. Morrow, Gordon & Byrd, Mr. L. James Gordon* and *Mr. Martin D. Altmaier,* for appellee Lou Ann Thomas.

*Mr. Charles E. Taylor,* for appellant Robert E. Thomas.

HENDERSON, P.J. This is an appeal from a judgment of the Court of Common Pleas of Licking County overruling a motion for a new trial and also for relief from judgment in a domestic relations case, in which defendant-appellant, Robert E. Thomas, argues he did not agree to an "in-court" property settlement agreement adopted by the trial court in a final decree of divorce and property division entry.

Appellant raises the following assignments of error:

"I. Whether construed as a separation agreement or court-ordered division

of marital property, the entry is so patently unfair so as to constitute an abuse as a matter of law.

"II. The trial court erred in making an award in conformity with what the court understood the parties' oral separation agreement on March 26, 1981, to be, as the court was not present where either the husband or wife purportedly manifested their assent to such terms at the conference held at the court house, nor did the court inquire as to the parties' assent in open court.

"III. The court erred in not holding the alleged 'hybrid oral separation agreement' invalid because it was not made in conformity with the Statute of Frauds.

"IV. If considered as an order the trial judge's adoption of the oral dictated settlement constitutes an abuse of discretion as a matter of law as the court failed to consider the relevant factors set forth in R.C. 3105.17.

"V. If considered an agreement, the dictated oral settlement is so unconscionable as to not be subject to specific performance even if such purported agreement had no infirmities in its execution.

"VI. The trial court's acceptance of counsel's waiver of defendant's constitutional right to a judicial determination of the division of property constituted a violation of defendant's constitutional rights of due process under the federal and state Constitutions.

"(A) Waivers of constitutional rights are not presumed and not only must they be voluntary, but such waiver must be a knowing intelligent act done by the party himself with sufficient awareness of the relevant circumstances and likely consequences.

"VII. The divorce is void because of the failure of plaintiff to corroborate the admissions of the defendant with 'other credible evidence' as required under Civil Rule 75(L)."

The evidence indicates that plaintiff-appellee, Lou Ann Thomas, filed a complaint for divorce and alimony indicating that the parties had been married for approximately thirty-one years. Appellant filed an answer and counterclaim by which he admitted that the real estate owned by appellee was inherited property from her parents but appellant claimed an equitable interest therein by reason of work and improvements that he made to said property during the marriage. The evidence indicates that the parties owned the following property:

1. An 80.50 acre farm in Harrison County, Ohio, which appellee had inherited from her parents, and which appellee admitted the value to be $16,000, although the 1969 fair market value was $3,000;

2. A 781 acre farm in Licking County which appellee had inherited from her parents which appellee admitted to have a value of $1,001,000, although the fair market value in 1969 was $113,676;

3. A residential property at 160 Rugg Avenue, Newark, Ohio, which appellee had inherited from her parents which appellee admitted to have a value of $69,500, although the fair market value in 1969 was $29,500;

4. Livestock on the Licking County farm appraised at $64,000;

5. Crops on the Licking County farm appraised at $22,000;

6. Machinery on the Licking County farm appraised at $46,950; and

7. Joint savings and checking accounts with balances amounting to $2,764.98.

The record in this case indicates that on March 25, 1981, one day before the case was assigned for trial, a conference was held by appellant with his attorneys, John Graham and Robert Graham in their offices in Zanesville, Ohio and that during that conference negotiations were held over the telephone with counsel representing appellee, namely, attorney James Gordon, and that the general basis for a settlement of the questions regarding division of property was arrived at, at least

in the minds of the attorneys. The record further indicates that on the morning of March 26, 1981, and as a result of the negotiations of March 25, 1981, counsel appeared in open court before the trial judge and dictated into the record the basic terms of the negotiated agreement, noting that although the basic agreement had been concluded there were certain details for implementing said agreement that had not yet been determined. When the trial judge learned that all matters had not been resolved, he informed counsel that they should proceed with trial. The parties were summoned to the court and additional negotiations and numerous conferences between appellant and his attorneys and counsel for appellee continued during the morning hours. The record further indicates that the parties again appeared in court during the afternoon of March 26, 1981, at which time the court was informed by counsel that the parties had agreed upon a division of assets and that the case would proceed on an uncontested basis. In the presence of appellant and appellee and counsel for both parties, counsel representing appellee dictated into the record the "agreed" division of assets. By the terms of the stipulated division of assets, appellant received a dollar value of his one-half interest in the assets of the partnership operating the Licking County farm; the Harrison County farm inherited by appellee; various bank accounts owned by him; one-half of the proceeds in the joint bank accounts; and certain tangible personal property. Appellee retained her ownership of the Licking County farm and the Newark residence, both of which she had inherited from her parents; her one-half interest in the assets of the farm partnership; one-half of the proceeds in the joint bank accounts; and bank accounts in her name and certain personal property. No provision was made for sustenance alimony. When the stipulation had been concluded, the following occurred before the court on March 26, 1981:

"MR. GRAHAM: Yes, your honor, I think that represents the basis of the agreement, and we concur in it.

"MR. GORDON: We are prepared to go ahead and put on evidence regarding the grounds for divorce, and character witnesses at this time if that is your wish.

"THE COURT: You may proceed."

(Thereupon the witnesses were called to the stand to testify, after which the following proceedings were had:)

"THE COURT: I am signing the memoranda of divorce, decreed to Lou Ann Thomas, dated March 26, 1981. No custody problems, no support problems, the settlement shall be as dictated into the record. Are there any problems to be solved? All other problems are to be decided by the Court, can you go by that?

"MR. GRAHAM: Yes, your Honor.

"MR. GORDON: By that, do I understand the court to mean that when this agreement is reduced to writing, if there is some disagreement between the parties or counsel, it would be submitted to you for resolution?

"THE COURT: Yes, and I would think that I would give you an opportunity to argue the case.

"MR. GORDON: Okay, fine."

We note that at the beginning of this hearing, the court read into the record the fact that both parties to the suit were present in court and were represented respectively by counsel.

Thereafter, appellant, who had made no attempt during the hearing before the court to indicate to the court that he had not agreed to this settlement even though his lawyer had stated that he was concurring in it and was committed to the settlement as presented by a stipulation to the court, indicated to his lawyer that he was not satisfied with this settlement and replaced his then trial counsel with a new lawyer. The record further indicates that a further hearing was held May 12, 1981, after counsel for appellee filed a motion asking the court to adopt as its entry the decree of divorce which had been presented to counsel then representing ap-

pellant who at the instance of his client refused to approve the settlement. The trial court after full hearing found that a settlement had been reached and proceeded to approve the judgment entry of divorce together with the division of property which had presumably been agreed upon by the parties at the hearing held before the trial court on March 26, 1981. It is from this entry that appellant filed a motion for new trial and for relief from judgment. The record indicates that to such motion there was attached various affidavits signed by appellant and others who indicated that appellant over the years had made certain improvements on the property that was later inherited by appellee. On July 28, 1981, appellant's motion for new trial and motion for relief from judgment were overruled. It is from that judgment that appellant now appeals to this court. We proceed to examine each of appellant's assignments of error.

I

The first assignment of error is directed at the fact that even if the separation agreement or court ordered division of marital property is construed as such, the judgment entry is so patently unfair as to constitute an abuse as a matter of law.

From an examination of the record in this case, we find that counsel representing appellant, to wit: John Graham, testified in the hearing on May 12, 1981 that only two matters remained unresolved between the parties, namely, the division of the income tax refunds for 1980 and the household goods. At the suggestion of the trial court, the parties agreed that such unresolved matters would be decided by the court itself and counsel representing both parties agreed and concurred that this was the settlement reached between the parties and that they would agree that if there were any unresolved issues that the court should decide those issues. We find therefore that there was a total agreement reached by the parties and it is interesting to note that the two items that were unresolved at the time of this hearing are not now in dispute but have actually been resolved. This is found in the transcript of proceedings of the hearings held before the Court of Common Pleas of Licking County on May 12, 1981, where the following appears:

"MR. WINCE: Your honor, as far as those two items are concerned, we have no objection as to the household items, and to the income tax, however, I would certainly want to look at the figures before I would advise my client as to what I thought would be advantageous to him as far as a joint return, or a separate return * * *.

"THE COURT: Do I understand that you are satisfied with Articles 10 and 11? [referring to the written Separation Agreement].

"MR. WINCE: We are not in disagreement with those, your Honor, that's correct."

Thus, it was represented to the court as a complete and final settlement between the parties and concurred in as such by the parties through their respective attorneys. While the court did not specifically request and speak to the parties to determine whether or not they assented to this, both parties were represented by competent attorneys who spoke on their behalf and both were present at the time the stipulated property settlement was dictated into the record. At the time, both counsel stated to the court that this did form the basis of a settlement of the division of property in the particular case. At no time did appellant rise to tell the court that he did not assent to this division of property and we therefore find that the agreement represented to the court to be the final agreement between the parties was, in fact, a settlement of the issues and a property division.

There is no requirement that a court by decree or the parties by agreement divide marital assets equally. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348 [20

O.O.3d 318], held recently that *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474], does not mandate an equal property division. The court stated in *Cherry, supra,* at page 355:

"In using the partnership analogy, this court in *Wolfe* did not intend to create a presumption rebuttable or irrebuttable, that property be divided equally upon divorce; rather a potentially equal division should be the starting point of analysis for the trial court. * * *"

The cases cited by appellant under this assignment of error are not authority for appellant's proposition that a court order incorporating the agreement of the parties dividing marital assets and permitting appellee to retain most but not all of her ancestral real estate is so unfair as to constitute an abuse of discretion as a matter of law. We hold that where, as here, a party has initiated negotiations leading to an "in-court" settlement stipulation incorporating essentially all of his demands, he should not be permitted to contend that the court in approving and adopting the bargain he struck has acted so unfairly as to constitute an abuse of discretion as a matter of law.

For such reasons, we hereby specifically overrule appellant's first assignment of error.

## II

The second assignment of error is that the oral separation agreement of March 26, 1981, was improper because the court was not present when either the husband or wife manifested their assent to such terms at the conference nor did the court inquire as to the parties' assent in open court.

A full and complete reading of the transcript of the testimony of appellant's attorneys Graham, clearly established that the "in-court" settlement did, in fact, incorporate the bargain which appellant had agreed upon. There is no question but that his attorneys represented to the court that his acceptance was somewhat reluctant but nonetheless an acceptance as clearly stated by his attorneys. *Buza* v. *Buza* (Feb. 25, 1981), Summit App. No. 9866, is a case where a wife appealed a judgment granting her husband an uncontested divorce and ordering a division of property in accordance with a settlement purportedly entered into at a pretrial conference. In this case, the wife claimed that she did not agree to give her husband a divorce and like appellant in the case *sub judice,* that she did not voluntarily enter into the separation agreement. The court's opinion indicates that the agreement between the parties was negotiated during a pretrial conference, was not reduced to writing, though both parties did sign the reporter's notes. Unlike the case *sub judice,* however, the agreement was not made a part of the record and adopted by the court as a stipulated settlement agreeement. In *Buza, supra,* Judge Mahoney in his opinion notes that the settlement agreement was the product of a volatile pressure cooker type of aggressive pretrial conference and that the evidence would support the court's finding that the wife reluctantly but voluntarily entered into the property agreement. In this respect, *Buza, supra,* is similar to the case at bar. We find that while appellant may have reluctantly entered into the settlement agreement, it was still voluntary on his part and was with full knowledge of the terms of the agreement entered into and that he was present at the time they were read into the record and adopted by the court. There is a difference between an extrajudicial settlement and a settlement made in open court. The settlement herein was made before the court and the court adopted the settlement as its judgment as to division of property and alimony. Under such circumstances, there was no requirement for any writing to be signed by appellant and appellee or their attorneys to evidence any conditions of the settlement. The settlement was read physically into the record and the court

adopted that settlement as its own entry and appellant cannot now be heard to say the court was in error in making an award in conformity with that settlement agreement which was represented by counsel for both parties to be their voluntary division of the property. (See *Spercel* v. *Sterling Industries, Inc.* [1972], 31 Ohio St. 2d 36 [60 O.O.2d 20]; and *Main Line Theaters* v. *Paramount Film Distributing Corp.* [C.A. 3, 1962], 298 F. 2d 801.)

Further, from a reading of this record, we find nothing to indicate that counsel representing appellant at the time of the trial of this case acted in any way beyond their authority:

"Q. MR. GORDON: That following these conversations, then, you informed me that your client was agreeable to the settlement in terms of, as revised that day, is that correct?

"A. Yes, absolutely.

"Q. And he had authorized you to make such a settlement, isn't that true?

"A. Absolutely.

"Q. We then informed the Court that we were prepared to proceed and we all came back in this Courtroom, is that true?

"A. Correct.

"Q. I then read into the record the settlement that had been agreed upon, isn't that correct?

"A. Yes, Jim, you did and I approved it as you read into, whatever the record reflects. I think there was only one point in which, it sticks in my mind now that you said incorrectly, and I did not pick up on it until after a day or two later, only one point.

"Q. Do you recall what that point was?

"A. Yes, sir. It's my recollection that you said into the record that the parties were obligated to file a joint income tax return for 1980, and you and I had stood over there by that Jury box where we did most of our negotiating and I told you that it — we would probably sign a joint return, but I wanted his options kept open on that and you agreed, now that is my recollection of our oral agreement, and it is my personal opinion and recollection that if this record commits him to signing a joint income tax return on that point, I missed a point there, but other than that it is as you dictated it in the record."

The trial court undoubtedly had to find as the finder of the facts after hearing testimony presented in support of the motion for a new trial which hearing was held on June 24, 1981 that the attorneys were, in fact, authorized to make the settlement presented to the court. We find nothing in this record to indicate differently.

For the reasons set forth hereinabove, we hereby specifically overrule appellant's second assignment of error.

### III

The third assignment of error is that the separation agreement was not made in conformity with the Statute of Frauds.

We find that the Statute of Frauds has no application to an "in-court" settlement stipulation nor to the order of a court and they do not constitute a contract of sale of an interest in real estate. The statute is limited to those situations where one seeks to charge a person upon a contract or sale of land, tenements or hereditaments, or interest in or concerning them. In the case *sub judice,* the "in-court" stipulation of settlement was entered into the record. This does not constitute a contract of sale. *Johnson* v. *Johnson* (June 23, 1976), Richland App. No. 1556, unreported, cited by appellant, is authority for the proposition that the Statute of Frauds renders a separation agreement not signed by a party unenforceable against such party. This is still good law but involves only an unexecuted agreement arising out of "out-of-court" settlement negotiations and has no application to the case at bar.

Since we are dealing with an "in-court" stipulation of settlement and not a

contract of sale, any dower interest of appellant in the real estate retained by appellee which was acquired by her through inheritance was extinguished by the decree of divorce and not by contract of sale and thus is not within the purview of the Statute of Frauds. (See R.C. 3105.10[D].)

For the reasons set forth hereinabove, we hereby specifically overrule appellant's third assignment of error.

## IV

The fourth assignment of error is that the court failed to consider the relevant factors set forth in R.C. 3105.17. We believe that appellant means to refer the court to R.C. 3105.18 which provides for alimony and how it shall be determined when alimony is necessary and what relevant factors the court must consider before granting alimony either in real or personal property or both. We find no authority in the state of Ohio that requires a court entering a judgment incorporating the terms of an "in-court" stipulation of settlement to consider the relevant factors set forth in R.C. 3105.18. On the contrary, the courts have enforced a settlement stipulation filed without approval of the objecting party or his attorney and without accepting evidence regarding the factors set forth in R.C. 3105.18. (See *Holland* v. *Holland* [1970], 25 Ohio App. 2d 98 [54 O.O.2d 175]; and *Spercel* v. *Sterling Industries, Inc., supra.*)

R.C. 3105.18 directs the procedures to be followed by the trial courts in contested proceedings and is not applicable to uncontested proceedings where the parties have stipulated an "in-court" settlement.

For the reasons set forth hereinabove, we hereby overrule appellant's fourth assignment of error.

## V

The fifth assignment of error is that the dictated oral settlement is so unconscionable so as not to be subject to specific performance even if such purported agreement had no infirmities in its execution.

Appellant is arguing that the agreement should not have been accepted or approved by the court. We note nothing in the record, however, to indicate that appellant objected at any point, either during the time that counsel for appellee was reading into the record the terms of the settlement or when his attorney was representing to the court that this was agreeable to appellant, or that appellant rose to his feet and advised the court that he could not and would not accept this as a settlement of the property rights between the parties. We cannot find that the agreement itself was so unfair or unconscionable that said agreement should be set aside and a new trial granted on behalf of appellant. *Snyder* v. *Buckeye State Bldg. & Loan Co.* (1927), 26 Ohio App. 166, cited by appellant, is not in point and does not speak to the issue of the agreement being unconscionable. Therein, the court found that a Reno divorce was void. Consequently, the parties were still married and the court held that husband's attempt to bar the wife's dower by an action on contract entered into out of court rather than by divorce was improper. That case certainly is not comparable to the case at bar where appellant initiated settlement through his attorney the day before the settlement was arrived at and read into the record of the court's proceedings and accepted by the court in the presence of all of the parties.

For all of the reasons set forth hereinabove, we hereby specifically overrule appellant's fifth assignment of error.

## VI

This assignment of error is that the acceptance of counsel's waiver of appellant's right to a judicial determination of his property rights constituted a violation of his due process rights under the federal and state Constitutions.

We cannot find any cases in the state

of Ohio that state as a matter of law that parties to a civil action cannot waive their right to trial. *Surgeon* v. *Surgeon* (1956), 165 Ohio St. 233 [59 O.O. 307], cited by appellant in his brief, does not in any way indicate that a party cannot waive his right to trial in a civil action such as a divorce case. *Surgeon, supra,* simply stands for the proposition that where a trial is held a party is entitled to have a fair and impartial judge conduct proceedings. In the case at bar, appellant was afforded an opportunity to be heard upon the issue of divorce and readily admitted that over the years he had been committing adultery with several women. He did not attempt to take the Fifth Amendment on this matter, but readily answered the questions put to him by counsel for appellee.

We cannot determine as a matter of law that a party in civil actions such as a divorce action cannot waive his right to a trial and that all of the issues in a divorce case must be resolved only after a full trial. On the contrary, agreements, waivers, and stipulations are binding and enforceable upon those persons who assent and agree thereto either through themselves or if represented by counsel through their counsel. This is what occurred in this case and for such reasons we hereby specifically overrule appellant's sixth assignment of error.

## VII

The seventh assignment of error is that the divorce is void because of the failure of appellee to corroborate the admissions of appellant with other credible evidence as required under Civ. R. 75(L).

*Glimcher* v. *Glimcher* (1971), 29 Ohio App. 2d 55 [58 O.O.2d 37], cited by appellant, does not stand for the proposition advanced by appellant. The case of *Casbarro* v. *Casbarro* (1953), 66 Ohio Law Abs. 505, does interpret a statutory predecessor to Civ. R. 75(L) wherein the court stated:

"Section 8003-12 G.C. providing in part that a 'divorce shall not be granted upon the testimony or admissions of a party unsupported by other evidence' does not prevent a divorce being granted upon the testimony of a party supported by the admissions of the other party which are not collusive." *Id.* at paragraph five of the headnotes.

We find nothing in this record to indicate that appellant's testimony was collusive in any way but just the opposite. We find that he was corroborating the allegations of appellee's complaint that he was guilty of adultery during the marriage. We note further that this corroborating testimony was given before the court and that it was not an "out-of-court" admission by appellant to someone else. Thus, appellee's testimony was corroborated by the testimony of appellant and was sufficient to permit the court to grant a divorce to appellee.

For the reasons set forth hereinabove, we hereby specifically overrule appellant's seventh assignment of error.

We find that settlement agreements and property divisions which are stipulated by counsel for the parties in the presence of the trial court and represented by counsel of all of the parties to be the agreement of the parties and which are read into the record before the court and in the presence of all of the parties are enforceable agreements when adopted by a court and are enforceable even though the stipulation of settlement is not signed by the parties.

For all of the reasons set forth hereinabove, we hereby specifically overrule all seven assignments of error of appellant and we affirm the judgment of the trial court.

*Judgment affirmed.*

MILLIGAN and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Fifth Appellate District.