In the Matter of John C.
SETA, Debtor.

Jacqueline JOHNSON, Plaintiff,

v.

John C. SETA, Defendant.

Bankruptcy No. 1–83–00297.
Adv. No. 1–83–0544.

United States Bankruptcy Court,
S.D. Ohio, W.D.

May 9, 1984.

### ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 7 adversary proceeding is before the Court pursuant to a complaint filed by Jacqueline Johnson, former wife of the debtor, John Seta, seeking a judgment that certain debts arising from the parties' divorce are nondischargeable under 11 U.S.C. § 523(a)(5).

A trial on this matter was held April 20, 1984. The parties stipulated that the July 6, 1982 and January 6, 1984 reports of the referees of the Court of Common Pleas for Hamilton County, Ohio, Division of Domestic Relations accurately set forth the facts surrounding this dispute. No additional evidence was introduced by either party. Accordingly, this Court hereby adopts the findings of fact set forth in both reports.

The parties agreed that the $500.00 in attorney fees which the state court order requires defendant to pay is a nondischargeable debt. The parties further agreed that Mr. Seta would abide by the final order of the state court as to his obligation to pay medical expenses of the two children from the marriage, who are presently in the custody of plaintiff.

The issues remaining for decision are: 1) whether a $6,000.00 second mortgage on the marital residence is a dischargeable debt; and 2) whether an obligation to pay $6,327.03 to the plaintiff as her share of the equity in the marital residence is a dischargeable debt.

According to the July 6, 1982 referee's report, which was approved by the Domestic Relations Court, the second mortgage in question was secured on July 7, 1981. Both plaintiff and defendant signed the note and mortgage, as did Mr. Robert Johnson, who subsequently married the plaintiff after the parties were divorced.

Under the July 6, 1982 report, defendant was to retain possession of the marital residence. He was also to assume and hold plaintiff harmless on both the first and second mortgage. Plaintiff was awarded $6,327.03 as her share of the equity in the house. Defendant was to pay her $3,000.00 within 120 days, and the balance within one year. This obligation was to be

secured by a third mortgage from defendant to plaintiff.

According to counsel, neither party is presently residing at the marital home, as it was sold after defendant filed his Chapter 7 petition. The purchase price was sufficient to pay off the first mortgage, but not the second mortgage. The amount of the remaining deficiency was not disclosed to the Court.

When the four-part test set forth in *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983) and *In re Wesley*, 36 B.R. 526 (Bkrtcy.S.D. Ohio 1983) is applied to the facts presented, we can only conclude that defendant must prevail.

While the obligations are obviously debts, and thus meet the first branch of the *Calhoun* test, they fail to meet the second and third branches of that test.

There is absolutely no evidence to indicate that either the parties or the Domestic Relations Court "intended to create an obligation to provide for alimony, maintenance or support." The language of the referees' reports, while not dispositive, certainly fails to disclose such an intention. Referee Norton specifically found that "there is no apparent reason why the assets of these parties should not be divided as equally as possible." (Exhibit A, page 8.) A painstaking effort was made to achieve this result. Indeed, the marital property was divided down to the last chair and chafing dish. Furthermore, the July 6, 1982 report specifically states that "[n]either party [is] to pay alimony to the other." (Exhibit A, page 12.)

The circumstantial evidence is equally unavailing to the plaintiff. While the marriage lasted some thirteen years and produced two children, the repayment of the $6,327.03 obligation in two lump sum payments indicates an intention to create a division of property rather than alimony, maintenance, or support. *In re Wesley, supra.* Even though the earning power of the plaintiff was and is far less than that of the defendant, she is currently being supported by a husband who, according to plaintiff's counsel, earns as much as $90,-000.00 per year. Plaintiff's expenses have jumped from $750.00 per month as of July, 1982 to $3,750.45 per month as of January, 1984. (See Exhibit A, page 7; Exhibit B, page 3) By contrast, the debtor's monthly expenses are currently some $100.00 in excess of his monthly take-home pay.

The fact that plaintiff's needs are currently being met more than adequately makes it apparent that neither of defendant's obligations has "the *effect* of providing the support *necessary* to ensure" that plaintiff's daily needs are met. *In re Calhoun, supra,* at 1109.

Since plaintiff has failed to sustain her burden of proof as to the second and third parts of the *Calhoun* test, we need not determine whether the amount of the obligations are "manifestly unreasonable." *In re Calhoun, supra,* at 1110.

For the reasons stated above, we find that the defendant's obligation to hold plaintiff harmless as to the deficiency on the second mortgage, as well as his obligation to pay her $6,327.03, are both dischargeable under § 523(a)(5). The foregoing shall constitute this Court's Findings of Fact, Opinion and Conclusions of Law.

IT IS SO ORDERED.