GUY, Circuit Judge,
concurring.
I concur separately for the reason that I find Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir.1983), to be dispositive of the issues raised in this appeal and to emphasize the importance of the test set forth by this court in that case.
I.
Defendants raise two issues on appeal: (1) whether Judge Sidman, the bankruptcy judge, erred in considering and relying on state law in determining dischargeability; and (2) whether the bankruptcy court erred in considering the changed circumstances and present need of plaintiff in determining dischargeability. Prior to Calhoun, there was no direction from this court on these two issues, and courts were split on both issues in determining whether payments by a debtor are in the nature of alimony or property settlement.
11 U.S.C.A. § 523 states in pertinent part:
§ 523. Exceptions to discharge.
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
******
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
******
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ....
The legislative history makes clear that it is bankruptcy law which is to control in interpreting the above section, not state law, and that the federal courts are not to sit as “super divorce courts.” However, it is impossible to avoid some reference at least to state law when interpreting a settlement agreement arrived at under state law. The question is to what extent a bankruptcy court may look to state law, *1036 and that issue is explicitly and fully addressed in Calhoun.
On the second issue raised by defendants, the courts are also split. See Annot., 69 A.L.R.Fed. 403 (1984). The original annotation even had a separate section discussing the split among the courts within the Sixth Circuit, including discussion of the bankruptcy decision in the present case. However, since the bankruptcy court rendered its decision, Calhoun has resolved the issue of consideration of “present need” for this circuit.[1]
As set forth in Calhoun, the formula for determining whether payments by a debtor are in the nature of alimony or property settlement is:
(a) whether the intent of the state court or the parties was to create a support obligation;
(b) whether the support provision has the actual effect of providing necessary support;
(c) whether the amount of support is so excessive as to be unreasonable under traditional concepts of support; and
(d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.
II.
I need not go through each step of the Calhoun analysis, as defendants have only presented two issues on appeal. The first is the state law question. Defendants really claim that two errors were made as to state law by the bankruptcy judge: (a) state law ought not to have been looked to at all; and (b) the judge misstated Ohio’s law. As to the first issue, the court stated in Calhoun:
Yet, while it is clear that Congress intended that federal not state law should control the determination of when an assumption of joint debts is “in the nature of” alimony or support, it does not necessarily follow that state law must be ignored completely. It is unlikely that Congress could have intended such a result. The underlying obligation to provide support in the first place is necessarily determined by state law. The federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist. Moreover, there is “no federal law of domestic relations.” DeSlyva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). Divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts. Boddie v. Connecticut, 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971) (Black, J., dissenting). We agree, therefore, with the Second Circuit’s reasoning in In re Spong, 661 F.2d [6] at 9 [2nd Cir.], that Congress could not have intended the bankruptcy courts to ignore well developed state law principles of domestic relations in determining whether a particular loan assumption is “in the nature of” alimony or support for purposes of the bankruptcy act.
Neither the case law nor legislative history, however, resolve the extent to which resort to state law would be appropriate.
715 F.2d at 1107-1108. The court found that the Bankruptcy Act’s “fresh start” requirement and Congress’ mandate that federal bankruptcy law considerations must be determinative require a more searching inquiry than merely applying traditional factors borrowed from state law. The first step of the inquiry is determination of intent, and the court held that: “In making this determination the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support.” 715 F.2d at 1109. In discussing the fourth step, the reasonable limits on nondischargeability, the court stated: “Use of factors similar to those a state court would employ to formulate a reasonable limit on support may be *1037 used to serve that limiting function in the context of a dischargeability determination.” 715 F.2d at 1110.
The bankruptcy judge in the present case considered and discussed the factors set forth in Ohio Rev.Code Ann. § 3105.18:
§ 3105.18 Alimony
(A) In a divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony as it deems reasonable to either party.
The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.
(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:
(1) The relative earning abilities of the parties;
(2) The ages, and the physical and emotional conditions of the parties;
(3) The retirement benefits of the parties;
(4) The expectancies and inheritances of the parties;
(5) The duration of the marriage;
(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
(7) The standard of living of the parties established during the marriage;
(8) The relative extent of education of the parties;
(9) The relative assets and liabilities of the parties;
(10) The property brought to the marriage by either party;
(11) The contribution of a spouse as homemaker.
I find that the consideration of state law by Judge Sidman is precisely that allowed by Calhoun.
In discussing their second sub-issue, defendants first seem to make the very error they accuse the trial court of making — misstatement of Ohio’s law. They look to the label in the agreement — property—and contend that, under Ohio law, since alimony was not expressly provided for by name in this settlement agreement, there was no intent that it be given. However, Calhoun makes clear that in bankruptcy the courts will look behind the labels given by the parties and are not bound by state law. Further, I find Judge Sidman’s interpretation of Ohio law to be correct and consistent with that of other bankruptcy court decisions.
While the parties have cast the argument before us, and it is common in these controversies to do so, as whether certain property (the interest in the General Electric benefit plan) was awarded as alimony or as property settlement, such a characterization is not particularly constructive. The reason for this approach probably lies in O.R.C. § 3105.63 where, in regard to separation agreements, the statute says that:
“The separation agreement shall provide for a division of all property, alimony, and, [custody matters].”
The statute thus appears to distinguish division of property from alimony. The two terms are not, however, mutually exclusive. Under the law of Ohio the parties may, upon a divorce, agree to how they will divide up their property, and such an award of property to a spouse may be regarded as alimony. In Cherry v. Cherry, 66 O.St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293 (1976), the Supreme Court of Ohio in commenting upon its earlier Wolfe decision said the following at 66 O.St.2d 352, 20 O.O.3d 318, 421 N.E.2d 1293:
“The issue before this court in Wolfe v. Wolfe, 46 Ohio St.2d 399, 75 O.O.2d 474 [350 N.E.2d 413] (1976), was whether a court of common pleas had power to modify the terms of a decree of divorce previously issued by it, which related to an allowance of “alimony.” Before addressing the issue, this court reexamined the basis and *1038 method upon which alimony is awarded in Ohio. In its reexamination the court pointed out that “alimony” is composed of two separate elements — alimony which constitutes a division of the marital assets and liabilities, and alimony consisting of periodic payments for sustenance and support.”
Hill v. Hill (In re Hill), 26 B.R. 156, 159 (Bankr.S.D. Ohio 1983). See also Carcifero v. Carcifero (In re Carcifero), 28 B.R. 158, 159 (Bankr.S.D. Ohio 1983).
Defendants then cite Thomas v. Thomas, 5 Ohio App.3d 94, 449 N.E.2d 478 (1982), for the claim that § 3105.18 is not applicable in Ohio to an uncontested settlement. However, Calhoun also involved a divorce case where the state court incorporated an uncontested agreement into a divorce decree dissolving the marriage. In Calhoun, this court found that state law could be referenced to determine the intent of the state court or the parties. See 715 F.2d at 1109. The point is that parties drawing up a settlement agreement in Ohio will presumably look to the state alimony law, in part, for guidance. The state alimony law is not the only source of evidence for a factual determination of intent to create support, but it is a legitimate one.
III.
Defendants’ second issue involves the “present need” of plaintiff. Defendants rely on Boyle v. Donovan, 724 F.2d 681 (8th Cir.1984), and Gentile v. Gentile (In re Gentile), 16 B.R. 381 (Bankr.S.D. Ohio 1981), to claim that the court may only look at factors indicating the intentions of the parties as of the time the agreement was entered into and that any change in the respective situations of the parties is a matter for the state domestic relations court. Defendants thus completely ignore the second step of the Calhoun analysis:
If the bankruptcy court finds, as a threshold matter, that assumption of the debts [or, in this case, monthly payments] was intended as support it must next inquire whether such assumption has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied. The distribution or existence of other property, for example, may make the continuing assumption of joint debts unnecessary for support, as might drastic changes in the former spouse’s capabilities for self-support. Substance must prevail over form.
715 F.2d at 1109. The court also stated:
If the circumstances of the debtor have changed from the time the obligation to the former spouse to pay joint debts was created so as to make such support now inequitable the bankruptcy court may consider the debtor’s current general ability to pay insofar as it relates to the continuing obligation to assume the joint debts.
715 F.2d at 1110 n. 11. See also Johnson v. Seta (Matter of Seta), 45 B.R. 8, 9 (Bankr.S.D.Ohio 1984) (where the court looked at the plaintiff’s present needs, relying on Calhoun). The above analysis is again precisely that undertaken by Judge Sidman.
I would thus find the order and opinion of the bankruptcy court not clearly erroneous, in light of Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir.1983), and would affirm the district court’s order for that reason.[2]

. But see, contra, Harrell v. Sharp (In re Harrell), 754 F.2d 902 (11th Cir.1985), where the court expressly disagreed with the Calhoun resolution of this issue.

. Although Judge Sidman did not have the benefit of Calhoun, his analysis is consistent with its formula. The district court did not rely on Calhoun and, in their briefs before this court, the parties have mentioned Calhoun only briefly. One possible explanation for the district court ignoring Calhoun and the parties just touching on it on appeal is that Calhoun dealt with the dischargeability of an agreement to hold a spouse harmless for debts. However, it seems clear thát the analysis is applicable to more than simply assumption-of-debt cases.
The Court of Appeals for the Sixth Circuit has recently had occasion to summarize and expand upon many of the principles found in the case law. While In re Calhoun, 715 F.2d 1103 (6th Cir.1983), specifically involved a debt assumption provision in a separation agreement, language of the Court’s opinion has general applicability in cases brought under § 523(a)(5).
*1039 Wesley v. Wesley (Matter of Wesley), 36 B.R. 526, 529 n. 1 (Bankr.S.D.Ohio 1983). The Wesley court went through the Calhoun analysis in determining the dischargeability of $4,200 in "lump sum alimony.” As the court correctly stated in Helm v. Helm (In re Helm), 48 B.R. 215, 220 (Bankr.W.D.Ky.1985):
This court is unable to view the Calhoun opinion in such a restrictive manner. Judge Kennedy's writing is a carefully detailed construct, a literal handbook for bankruptcy judges, and to perceive it only as a narrow assumption-of-debt case is to view the world through the wrong end of a telescope. We take Calhoun as having general applicability to all support cases brought under 11 U.S.C. § 523(a)(5).