DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Erie County Court of Common Pleas, which entered a judgment entry approving the parties' settlement. For the reasons that follow, we find that the decision of the Erie County Court of Common Pleas should be affirmed.
This case arises out of an appropriation of land owned by appellant C. Hughes, Trustee.[1] At the time this action was commenced, C. Hughes owned approximately thirty-eight acres of land between Sandusky, Ohio and Huron, Ohio. The property abuts on either side land owned by appellee, the Ohio Department of Natural Resources. Appellee's property is known as the Sheldon Marsh State Nature Preserve ("Sheldon Marsh"). To the east of appellant's property (immediately east of Sheldon Marsh) is Sawmill Creek Resort. At issue in this case is the location of a sidewalk appellant wishes to have constructed to connect the residue of her property to Sawmill Creek Resort. The placement of this sidewalk necessarily requires that the sidewalk either run through Sheldon Marsh or run along the Ohio Department of Transportation right-of-way along Route 6, at the southern edge of the property in question.
In May 1992, appellee filed the instant action to appropriate approximately ten acres of appellant's land. Appellant was to retain title of the residue, approximately twenty-eight acres of land. In July 1993, appellee amended its complaint to add, inter alia, Shirley Murray and James Murray. Shirley Murray, also known as S.A. Knowles, is the daughter of C. Hughes, and James Murray, an attorney, is Shirley Murray's husband. James Murray had represented C. Hughes since the commencement of the instant lawsuit, and after the amended complaint, he represented himself as well. According to the amended complaint, James and Shirley Murray were added as defendants because they "have or may claim an estate, title or interest in the subject property sought to be appropriated."
In June 1995, C. Hughes executed a limited warranty deed passing title of the thirty-eight acres to S.A. Knowles (Shirley Murray), her daughter. C. Hughes died in July 1996. For purposes of this lawsuit, S.A. Knowles was substituted for C. Hughes, though apparently no formal substitution of parties was filed.
The case was set for trial on October 4, 1999. On that date, the trial court asked the parties to engage in settlement negotiations. The parties appear to agree that the following persons were present in the room where the negotiations took place: Kevin J. Zeiher, Duffield Milkie, and Gene Wright on behalf of the state of Ohio, and Linde Hurst Webb, Joseph Zannieri, and Shirley Murray for C. Hughes, Trustee. Ms. Webb was acting in her capacity as counsel for James and Shirley Murray, having entered an appearance on September 10, 1999. Mr. Zannieri, an attorney and an associate of James Murray, was apparently acting as a representative of the Murrays, though he was not counsel of record for them. James Murray contends that he was not allowed in the room to participate in the settlement negotiations.
After negotiating for some period of time, the parties indicated that they had reached an agreement. That agreement was read into the record by Ms. Webb and Mr. Zeiher. It is undisputed that James Murray was present when the settlement was read into the record. With regard to the sidewalk in question, Ms. Webb stated as follows:
 "* * * The other terms would be that the Ohio Department of Natural Resources will not oppose any down zoning to residential development within the existing code of Huron Township.
 "They would not oppose a sidewalk within the Ohio Department of Transportation right-of-way. That the —
"[interrupted by Mr. Zeiher.]"
Following the recitation of the rest of the settlement terms, the following exchange took place:
 "THE COURT: The agreement that's been read into the record is acceptable to the State of Ohio?
 "MR. ZEIHER: It is, Your Honor, with one other point. Any signage that may be required to designate that access point would be erected and paid for by S. Knowles. Signage similar to that that was utilized at the Sawmill Creek Exit.
"MS. WEBB: Which we agree to.
 "THE COURT: And is this agreeable to the property owner?
"MS. WEBB: Yes.
"THE COURT: I want her to say it.
"MR. MURRAY: (Inaudible) [sic]
"FEMALE SPEAKER: Yes, it is, Your Honor.
 "THE COURT: All right. Fine. Then the matter is concluded. I would expect then counsel will prepare the necessary judgment entry and submit it or if you each want to prepare one and submit it to each other. And if you can't agree on the language, you will both submit an entry to the Court and the Court will then make a decision.
"* * *."
The parties agree that appellee filed a proposed judgment entry in accordance with the trial court's request. Appellant did not. However, on November 3, 1999, appellant filed with the court a "Motion to Reset This Matter for Trial or, in the Alternative, for the Court to Order Enforcement of the Proposed Settlement Agreement, the Outlines of Which Were the Subject of the October 4, 1999 Meeting." Appellant requested as relief that the court "abandon any efforts" to settle the case and reset the case for trial. Barring that relief, appellant stated in the motion that appellant would be willing to implement the settlement "if and only if the court [would] take control of the settlement process" and order,inter alia, that appellant receive an easement to construct a sidewalk.
On December 14, 1999, the court filed three orders: (1) a judgment entry adopting appellee's proposed judgment entry memorializing the settlement agreement made at the October 4, 1999 hearing; (2) a judgment entry denying appellant's motion for extension of time in which to submit a judgment entry in accordance with the court's request on October 4, 1999; and (3) a judgment entry denying appellant's "Motion to Reset This Matter for Trial or, in the Alternative, for the Court to Order Enforcement of the Proposed Settlement Agreement, the Outlines of Which Were the Subject of the October 4, 1999 Meeting."
On December 23, 1999, appellant filed with the trial court a "Motion for Reconsideration[,] Relief from Judgment and Oral Hearing on Motion." The trial court held a hearing on this motion on January 12, 2000. On January 13, 2000, appellant filed the instant appeal from the December 14, 1999 judgment entry approving the settlement. Then, on January 20, 2000, the trial court filed a judgment entry denying the appellant's December 23, 1999 "motion for reconsideration." On February 3, 2000, appellant filed a motion to set aside the settlement. The court apparently did not rule on this motion, but on February 9, 2000, it entered a judgment entry nunc pro tunc clarifying certain language in the December 14, 1999 judgment entry relating to rezoning of the residue.
Appellant sets forth the following assignments of error:
 "I. THE COURT ERRED IN EXCLUDING THE APPELLANT'S COUNSEL FOR RECORD FROM THE NEGOTIATIONS.
 "II. THE PURPORTED `SETTLEMENT AGREEMENT' CANNOT BE ENFORCED. IT DOES NOT MEET THE STATUTE OF FRAUDS.
 "III. EVEN IF THE STATUTE OF FRAUDS DOES NOT APPLY, THE PURPORTED SETTLEMENT AGREEMENT IS NOT EFFECTIVE.
 "IV. EVEN APART FROM THE REQUIREMENTS OF THE STATUTE OF FRAUDS, THE COURT ERRED IN NOT RELIABLY DETERMINING THE CONTENT OF THE AGREEMENT BEFORE REDUCING IT TO AN ENTRY, AND IN KEEPING THE ENTRY UNCHANGED EVEN ENOUGH THE UNCONTROVERTED TESTIMONY WAS THAT THE DICTATED TRANSCRIPT DID NOT REFLECT THE AGREEMENT.
 "V. THE COURT ERRED BY REJECTING THE EARLIER SETTLEMENT OUT OF HAND WITHOUT HAVING A HEARING OR MAKING AN ATTEMPT TO RELIABLY DETERMINE ITS TERMS."
The first four of appellant's assignments of error relate to the enforceability of the settlement agreement memorialized by the December 14, 1999 judgment entry. We start our analysis by noting, generally, that a settlement arrived at in court with the parties present constitutes a binding agreement. Spercel v. Sterling Indus. (1972),31 Ohio St.2d 36, paragraph two of the syllabus; Mack v. Polson RubberCo. (1984), 14 Ohio St.3d 34, 36. Moreover, when the settlement is reached in court and preserved on the record, the court may approve a judgment entry that reflects the terms of the agreement, adopting the agreement as an order of the court. Holland v. Holland (1970),25 Ohio App.2d 98, 101-102; Ellis v. Lunn (Jan. 31, 1997), Erie App. No. E-96-017, unreported, corrected (Oct. 15, 1997), Erie App. No. E-96-017, unreported. Therefore, we start with the general principle that, in ordinary circumstances, an in-court settlement read into the record and memorialized in a judgment entry is binding on the parties.
In her first assignment of error, appellant contends that the trial court improperly excluded James Murray from the settlement negotiations. Since appellant did not object to this in the court below, we review this assignment of error for plain error. State v. Barnett (1999),131 Ohio App.3d 137, 142. Plain error is error that is obvious and prejudicial and which, if not corrected, "would materially and adversely affect the character of and the public confidence in judicial proceedings." Id.
Present for settlement negotiations were Shirley Murray and her counsel, Linde Hurst Webb. Though James Murray was an attorney of record, he apparently was excluded from settlement negotiations. We conclude that the trial court did not err in excluding Mr. Murray since another counsel of record was present. Nevertheless, appellant argues that Ms. Webb was hired as trial counsel only and did not have authority to settle the case. However, present with Ms. Webb during negotiations was Shirley Murray, the property owner.[2] Since Ms. Webb did not engage in negotiations without the property owner in attendance, Ms. Webb's authority to settle the lawsuit is not an issue. Furthermore, Mr. Murray was present when the settlement was read into the record, and he did not object to the settlement at that time.[3] Therefore, we can find no error in the court excluding Mr. Murray from settlement negotiations. Appellant's first assignment of error is found not well-taken.
Appellant raises the statute of frauds in her second assignment of error. Appellant contends that the settlement is unenforceable because it was not signed by either appellant or appellant's counsel.[4]
Appellant did not raise this defense at trial and has therefore waived it for purposes of appeal. See Klever v. City of Stow (1983),13 Ohio App.3d 1, 5. Since this defense is waived, it will not form the basis for reversal unless it amounts to plain error. Barnett,131 Ohio App.3d at 142.
Appellant cites Brashears v. Ebersole (1921), 14 Ohio App. 23, to support her contention that the agreement is rendered unenforceable by the statute of frauds. The modern rule, however, is that in-court settlement agreements need not comply with the statute of frauds since in-court settlements are not contracts of sale. See Thomas v. Thomas
(1982), 5 Ohio App.3d 94, 99-100; Fugo v. White Oak Condominium Assoc.
(June 27, 1996), Cuyahoga App. No. 69469, unreported; Cascade Corp. v.Kohl (October 18, 1988), Clark App. No. 2414, unreported. See, also,Rothfusz v. Fitzgerald (Feb. 3, 1994), Cuyahoga App. No. 64526, unreported. We find these cases persuasive, and we hold that in- court settlement agreements need not comply with the statute of frauds. Therefore, appellant's second assignment of error is found not well-taken.
In her third assignment of error, appellant contends that, even disregarding the statute of frauds, the settlement agreement is ineffective because it "lacks agreement or consensus" regarding essential terms. Appellant argues that the dictated settlement (i.e., the transcript of the hearing where the settlement was read into the record) is not effective because it does not unequivocally state the purchase price, because it does not correctly state the agreement on rezoning (which was the subject of the court's February 9, 2000 nunc pro tunc
entry), because it contains inaudible passages, and because Ms. Webb was interrupted as she was reading the settlement into the record. However, the judgment entry filed by the court on December 14, 1999 states the legal description of the property, it states the price in unequivocal terms, and it states the terms as to rezoning. (The nunc pro tunc entry did not change the terms as to rezoning, it merely clarified those terms by stating them in the same language used when the settlement was read into the record.) We find that all essential terms of the settlement were contained in the judgment entry of December 14, 1999 and that the judgment entry accurately reflected the settlement as read into the record.[5] Therefore, appellant's third assignment of error is found not well-taken.
In her fourth assignment of error, appellant claims that the court erred in reducing the settlement to a judgment entry without reliably determining its terms through an evidentiary hearing. As noted earlier, where a settlement agreement is reached in court in the presence of the trial judge and the agreement is read into the record, the judge has the authority to sign a judgment entry approving the settlement and adopting the settlement as an order of the court. Holland,25 Ohio App.2d at 101-102; Ellis v. Lunn, supra. Furthermore, even in the case of an out-of-court settlement, except where fraud, duress or undue influence is alleged, or except where factual disputes exist as to the terms of the settlement, a court need not conduct an evidentiary hearing before signing a judgment entry adopting the settlement. Mack, 14 Ohio St.3d 34, at syllabus.
In this case, appellant points to testimony from the January 12, 2000 hearing on his motion for reconsideration/motion for relief from judgment to establish a dispute over the terms of the settlement. However, appellant's reliance on the testimony from the January 12, 2000 hearing is misplaced for several reasons. First, this hearing was held pursuant to appellant's motion for reconsideration/relief from judgment. Appellant is not appealing from the denial of this motion; instead, she is appealing from the December 14, 1999 judgment entry. Therefore, the only documents properly before this court are the documents before the trial court prior to the December 14, 1999 judgment entry. Second, to the extend that appellant's December 23, 1999 motion is a motion for reconsideration, that motion is a nullity. See Pitts v. Ohio Dept. of Transp. (1981),67 Ohio St.2d 378, paragraph one of the syllabus. Since the hearing on January 12 was held in furtherance of a null motion, the transcript of that hearing is not properly before us. Third, to the extent that the December 23, 1999 motion was a motion for relief from judgment pursuant to Civ.R. 60(B), the trial court lost jurisdiction to resolve this motion once appellant filed her notice of appeal to this court on January 13, 2000. Howard v. Catholic Social Servs. of Cuyahoga Cty. Inc. (1994),70 Ohio St.3d 141, 147, reconsideration denied (1994), 70 Ohio St.3d 1457. Therefore, the January 12, 2000 hearing, which was held in furtherance of a motion for which the trial court ultimately did not have jurisdiction to rule upon, is not properly before this court.
For all of these reasons, we cannot look to the January 12, 2000 testimony to establish a dispute as to the terms of the settlement.
To the contrary, the record before the court when it signed the December 14, 1999 judgment entry did not reveal a dispute as to the terms of the settlement. The settlement was read into the record in the presence of the parties and the trial judge, and appellant did not object to its terms. In fact, appellant assented to its terms. Accordingly, we find that the trial court did not err by not reliably determining the terms of the settlement before entering a judgment entry approving it. Appellant's fourth assignment of error is found not well-taken.
Finally, appellant contends in her fifth assignment of error that the parties had previously reached a settlement and that the court erred when it failed to rule on appellant's motion to enforce the settlement. Appellant states that, in an off-the- record discussion, the trial court stated its opinion that the previous settlement was unenforceable. Relying on Ohio State Tie Timber Inc. v. Paris Lumber Co. (1982),8 Ohio App.3d 236, appellant contends that the trial court should have conducted an evidentiary hearing to reliably determine if a settlement had been achieved and, if so, what its terms were.
We find appellant's reliance on Ohio State Tie Timber misplaced. In that case, the court held that, before entering a judgment on a purported out-of-court settlement, the trial court must hold an evidentiary hearing to reliably determine whether a settlement was achieved and, if so, what its terms were. Here, the trial court did not enter judgment on the initial settlement, so there was no need for the court to hold an evidentiary hearing. In fact, since the trial court did not rule on the motion to enforce the settlement, the motion is deemed denied. State exrel. Cassels v. Dayton City Schools Dist. Bd. of Edn. (1994),69 Ohio St.3d 217, 223; Andorfer v. Assoc. Anesthesiologists ofSpringfield, Inc. (Oct. 29, 1998), Franklin App. No. 98AP-341, unreported, fn. 1. Since appellant is not appealing from denial of this motion, no further discussion is warranted. Appellant's fifth assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice was done the party complaining, and the decision of the Erie County Court of Common Pleas is affirmed. Court costs assessed to appellant.
Peter M. Handwork, J., Richard W. Knepper, P.J. Mark L. Pietrykowski,J., JUDGES CONCUR.
 ____________________________ JUDGE
[1] Nominally, C. Hughes, Trustee, is the appellant in this case. However, the parties agree that C. Hughes is deceased and that her daughter, Shirley Murray, also known as S.A. Knowles, has been substituted for her without a formal substitution of parties.
[2] Though Mr. Murray repeatedly states in his briefs that he is a property owner, the record indicates that his wife, in fact, is the property owner. When Mr. Murray testified about ownership of the property in his deposition, he stated, "It descended to Shirley and I." His next statement was, "All right and title descended to Shirley."
[3] Appellant points out that, when the court asked on the record if the settlement was agreeable to the parties, Mr. Murray's response was listed as "inaudible." However, appellant (represented by Mr. Murray) does not contend that Mr. Murray's response was an objection. Moreover, it is appellant's burden to provide the portions of the transcript necessary to determine his or her assignments of error. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199; App.R. 9(B). If appellant fails to file the necessary portions of the record, an appellate court "* * * has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp, 61 Ohio St.2d at 199. In this case, appellant could have prepared a statement of the evidence pursuant to App.R. 9(C). See State v. Gahagan (Sept. 29, 2000), Huron App. No. H-99-028, unreported. Appellant did not do so. Therefore, we will presume the validity of the underlying proceedings and presume that the trial court did not proceed despite an objection from appellant's counsel.
[4] The statute of frauds is embodied in R.C. 1335.05. That section provides, in pertinent part:
 "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
[5] Appellant also argues that the December 14, 1999 judgment entry did not properly reflect the terms of the settlement because the language relating to placement of the proposed sidewalk differed between the October 4, 1999 transcript and the December 14, 1999 judgment entry. The October 4, 1999 transcript records Ms. Webb as saying, "* * * They [appellee] would not oppose a sidewalk within the Department of Transportation right-of-way." The judgment entry provides, "The State of Ohio, Department of Natural Resources further agrees not to oppose a proposed sidewalk to be in the right of way of the Ohio Department of Transportation's right of way along US Route 6 _adjacent to the residue." (Emphasis added.) Appellant apparently believes that the phrase "adjacent to the residue" means adjoining or abutting the residue. As such, according to appellant, the judgment entry does nothing more than give her a right to construct a sidewalk on her own property. (Appellant wants the sidewalk to traverse appellee's property and lead to Sawmill Creek Resort.) Appellant's reading of the term "adjacent" is too narrow. In ordinary usage, "adjacent" means "not distant," "nearby," "having a common endpoint or border," or "immediately preceding or following." Webster's Ninth New Collegiate Dictionary (1990) 56. The word "adjacent" is different from the words "adjoining" or "contiguous." Id. Therefore, the language in the judgment entry does not restrict the placement of the sidewalk to the Ohio Department of Transportation right-of-way adjoining the residue.